KRAMER v. KRAMER.

SAME v. KRAMER et al.

(Circuit Court of Appeals, Fifth Circuit.  November 23, 1912.)

No. 2,416.

1. Wills (§ 764*)—Legacies—"Ademption."

Ademption of a specific legacy is the extinction or withdrawal of it, in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. Ademption is effected by the extinction of the thing or fund bequeathed, or by disposition of it subsequent to the will from which an intention that the legacy should fail is presumed. The term "ademption" is sometimes used as synonymous with satisfaction, but such use is inaccurate, as ademption operates independently of intention in case the specific thing given is, at the testator's death, no longer owned by him.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1978; Dec. Dig. § 764.*

For other definitions, see Words and Phrases, vol. 1, pp. 179–181.]

2. Wills (§ 765*)—Legacies—Ademption—Statutes.

Code Ga. 1910, § 3908, provides that a legacy is adeemed or destroyed, wholly or in part, whenever the testator, after making his will during his life, delivers the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given, or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy. Held that, under such section, ademption is confined to specific legacies.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1979; Dec. Dig. § 765.*]

3. Wills (§ 756*)—"General Legacy."

A "general legacy" is a bequest chargeable on the general estate, and not so given as to be distinguishable from other parts of the estate of the same kind, or one of a quantity merely including all bequests which are neither demonstrative nor specific.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1949–1955; Dec. Dig. § 756.*

For other definitions, see Words and Phrases, vol. 4, pp. 3071–3073; vol. 8, p. 7670.]

4. Wills (§ 755*)—Legacies—"Demonstrative Legacy."

A "demonstrative legacy" is a bequest of a thing or money not specified or distinguished from all others of the same kind, but payable out of a designated fund.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1947, 1948; Dec. Dig. § 755.*

For other definitions, see Words and Phrases, vol. 2, pp. 1980, 1981; vol. 8, p. 7633.]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. WILLS (§ 753*)—"SPECIFIC LEGACY."**

A "specific legacy" is a bequest of a particular thing or money specified and distinguished from all others of the same kind.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944; Dec. Dig. § 753.*

For other definitions, see Words and Phrases, vol. 7, pp. 6600–6604; vol. 8, p. 7803.]

**6. WILLS (§ 755*)—DEMONSTRATIVE LEGACY—ADEMPTION.**

Testator bequeathed to his wife $10,000, to be realized out of the proceeds of such life insurance as might be in force on his life at the time of his death. Prior to his death he changed a benefit certificate so as to make it payable to his wife, and died leaving policies amounting to $15,000 and an estate valued at $200,000. *Held,* that such legacy was demonstrative, and not subject to ademption, and was not therefore adeemed to the extent of the value of the certificate given to the wife in testator's lifetime.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1947, 1948; Dec. Dig. § 755.*]

**7. WILLS (§ 772*)—LEGACIES—SATISFACTION—LOCO PARENTIS.**

The giving of a portion by testator to a legatee subsequent to the execution of the will operates as a satisfaction of the legacy, or pro tanto, if the gift be less than the legacy, provided the testator is the father of the legatee or stands in loco parentis to him.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1978–1994; Dec. Dig. § 772.*]

**8. WILLS (§ 772*)—LEGACIES—SATISFACTION—GIFT DURING TESTATOR'S LIFE.**

Testator bequeathed to his wife $10,000, to be realized out of the proceeds of such life insurance as might be in force at the time of his death. Subsequently he caused the beneficiary of a certificate to be changed, so as to make it payable to her, and died leaving life insurance amounting to $15,000 and an estate of over $200,000. He bequeathed the residue to his wife and son, but provided that his son should account for all advancements made to him after the date of the will. There was no provision, however, with reference to any future gift that he might make to his wife, his other legatee. *Held* that, in the absence of parol evidence that he intended that the policy given to her should be deducted from her legacy, such gift did not operate as a pro tanto satisfaction of her legacy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1978–1994; Dec. Dig. § 772.*]

Appeal and Cross-Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Controversy between Ruth Kramer and Ernest W. Kramer and Charles A. Lyle, as executor of the will of Ernest G. Kramer, deceased, concerning the construction of the will. From a decree construing the will (Kramer v. Lyle, 197 Fed. 618) Ruth Kramer appeals, and Ernest W. Kramer prosecutes a cross-appeal. Reversed in part.

P. H. Brewster, of Atlanta, Ga., and Sidney Holderness, of Carrollton, Ga., for appellant and cross-appellee.

Edgar Watkins, of Atlanta, Ga. (Watkins & Latimer, of Atlanta, Ga., on the brief), for appellee and cross-appellant.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SHELBY, Circuit Judge. This is an appeal and cross-appeal from a decree of the District Court construing the will of Ernest G. Kramer. The controversy is between Ruth Kramer, the widow and a legatee of the testator, and Ernest W. Kramer, the only child and also a legatee of the testator. There are many assignments of error on the appeal and cross-appeal, but we are of the opinion that none of them is well taken, except the first assignment on the appeal. For convenience of reference, the will is copied in the margin.[1]

[1] "State of Georgia, Carroll County.

"I, E. G. Kramer, of said state and county, being of sound and disposing mind and memory, do make this my last will and testament, by it revoking all others previously made.

"Item 1. I will and bequeath unto my beloved wife, Ruth, the following described property, to-wit, my home place, situated on the south side of South street, in the city of Carrollton, said state and county. Said place containing twenty-two acres of land, more or less. On which is situated the residence now occupied by me. Also all furniture, furnishings and household goods of every kind, character and description that might be in said house at the time of my decease, including books, prints, pictures, bric-a-brac, silver and gold plate, wearing apparel, ornaments, also such provisions, cooking utensils, kitchen and dining-room furniture as may be in said residence at the time of my decease. Also all horses, mules, cattle, swine, buggies, wagons, carriages, harness, farming implements, garden implements and other things that might be on said place at the time of my decease. Also that lot in said city of Carrollton, said county, situated on the north side of said South street, bounded on the north by the Central of Georgia Railway right of way, on the east by a lot owned by said railway, on the south by said South street, and on the west by an alley which runs between said property and what is known as the 'Marchman Place.' Also a lot on the south side of said South street in said city and county, fronting said street one hundred feet and running back same width, south, five hundred feet, bounded on the east by the 'Meadows Place,' now in possession of Fullilove. Also two hundred shares of the capital stock of the Mandeville Mills, a corporation of said state and county, said stock being of the par value of one hundred dollars per share. Also one hundred shares of the capital stock of the First National Bank of Carrollton, a banking corporation of said county, said stock being of the par value of one hundred dollars per share. Also the sum of ten thousand dollars to be realized out of the proceeds of such life insurance as may be of force on my life at the time of my death. Also all notes, accounts and judgments that might be owing me at the time of my death, together with all lands, wherever situated, of which I may die seized and possessed, which said lands have been sold by me and bond for titles given to the purchasers and the purchase money or any part thereof due me at the time of my death; my purpose being to convey such purchase money notes to my said wife together with the security I might hold therefor and give her full power and authority to execute to the purchaser deeds in accordance with such bonds as I may have given, in case of payments to her or in case she elects to sue, to give her full authority either to bring suit for the land or to sue upon the purchase money notes and execute to the purchaser and have the same recorded in the office of the clerk of the superior court, where the land may lie, a deed for the purpose of levy and sale as per the requirements of the law in such cases made and provided.

"Item 2. I will and bequeath unto my beloved wife, Ruth, in addition to what is bequeathed here in item one, the sum of five thousand dollars, which is expressly in lieu of years support, in case she accepts this legacy in lieu of years support, she will make it known in writing to the executor of this my last will and testament within ninety days of the date of his qualification.

"Item 3. I will and bequeath to my son, Ernest, the following described property, to wit: All real estate of which I may die seized and possessed, situated in the city of Carrollton, not disposed of in item one of this my last

By the first item of his will the testator bequeathed to his wife, Ruth Kramer, real estate and many articles of personal property, and the item contains the following words:

"Also the sum of ten thousand dollars to be realized out of the proceeds of such life insurance as may be of force on my life at the time of my death."

It appears from the record that there were, at the time the will was made and at the time the testator died, policies on his life to the amount of $15,000. One of these policies was in the Royal Arcanum, a fraternal insurance order, for the sum of $3,000. After the making of the will, the testator had the beneficiary named in the $3,000 policy changed, making it payable to his wife, Ruth Kramer; and after the death of the testator she collected on this policy $2,630.49. The other policies, amounting to more than $10,000, which, it is as-

---

will and testament. Also two hundred shares of the capital stock of the Mandeville Mills, a corporation of said state and county, said stock being of the par value of one hundred dollars per share. Also one hundred shares of the capital stock of the First National Bank of Carrollton, a banking corporation of said county, said stock being of the par value of one hundred dollars per share.

"Item 4. It is my will that the residue of my estate be divided equally between my wife, Ruth, and my son, Ernest, share and share alike. My said son, Ernest, to account for all advancement that I may make him after this date, which are charged to him on the back of this my last will and testament.

"Item 5. I nominate and appoint my friend, C. A. Lyle, executor of this my last will and testament. My executor shall not be required to make returns to any court, except, when my estate shall have been fully administered, he shall file with the ordinary a report showing all receipts and disbursements on account of my said estate. My executor will give bond, conditioned for the faithful performance of his trust, in the sum of fifty thousand dollars; said bond to be made by a bond or surety company, engaged in such business in the state of Georgia, and whose financial standing has been approved by the proper authorities of said state of Georgia; the premium on said bond to be paid out of my estate at the expense of my estate.

"In testimony whereof, I have hereunto set my hand this the 9th day of February, 1910.

"Signed and published by E. G. Kramer as his last will and testament in presence of the undersigned, who subscribe our names hereto as witnesses at the instance and request of said testator, and in his presence and in the presence of each other.

"This the 9th day of February, 1910.

"[Signed]                                            E. G. Kramer.
"Witnesses:
    "W. J. Stewart.
    "L. C. Mandeville.
    "C. B. Simonton.
"Look on back of cover for amounts advanced on this to my son.
    "[Signed]                                        E. G. Kramer."

(Advancements on Back of Cover.)

"I this day charge to my son, Ernest, an advancement of five thousand dollars, as per item 4 of my will. February 19, 1910.
    "[Signed]                                        E. G. Kramer."
"I this day charge to my son, Ernest, an advancement of five thousand dollars, as per item 4 of my will. March 4, 1910.
    "[Signed]                                        E. G. Kramer."
"I this day charge to my son, Ernest, an advance of one thousand dollars, as per item 4 of my will.
    "[Signed]                                        E. G. Kramer."

sumed, were payable to the estate of the testator, have been collected, and the proceeds are held by Charles A. Lyle, the executor named in the will. Ernest W. Kramer, the testator's son, contends that the $10,000 legacy should be credited by the $2,630.49 which Ruth Kramer collected on the Royal Arcanum policy, and that the executor should be allowed to pay her on account of the legacy only $7,369.51. Ruth Kramer contends that the $3,000 policy was a gift from her husband, while in life, to her, and that the legacy is unaffected by the gift, and she is entitled to receive the whole of it.

The question raised by these contentions was decided in the District Court against Ruth Kramer, the court holding that she was entitled only to the remainder of the legacy, after deducting the sum she received on the Royal Arcanum policy. The first assignment of error on the appeal assails the correctness of this ruling.

Ordinarily, a testator who has by his will given his wife $10,000, will not deprive her of any part of the legacy by making gifts to her during his life. If a testator bequeathed to his wife $10,000, and subsequently, before his death, gave her $3,000, on those facts standing alone, no one would assert that her legacy was adeemed or satisfied pro tanto and that she could not claim all of it from her husband's executor.

On the other hand, if a husband bequeaths to his wife "$10,000 in United States bonds, numbered from 1 to 50, inclusive, now in my bank box," and subsequently, before his death, gives the bonds to his wife, the legacy, on these facts standing alone, is adeemed, and she has no claim against the estate on account of it. It would be the same if he gave the bonds to some one else after making the will and before his death. If no bonds were found in the box or owned by the estate, they could not pass to her by the will. The legacy would be adeemed. It would be adeemed pro tanto, if only a part of the bonds were disposed of in like manner.

In the first instance, the legacy of $10,000 was general, and, the subsequent gift being not at all inconsistent with the legacy, there could be no presumption, from it alone, of ademption or satisfaction pro tanto.

In the second instance, the legacy of the bonds was specific, and the subsequent disposal of them was inconsistent with the legacy. If he gave them to her in life, she could not take them by the will; if he gave them to some one else or disposed of them otherwise before he died, they could not pass to her by the will when it took effect at his death.

In the case at bar, outside of the will itself and the fact of the gift of the testator to his wife, there is no evidence to show with what intent the bequest was made, or with what intent the subsequent gift was made. As the testator did not stand in loco parentis to the legatee (Bennet v. Bennet, 10 Ch. Div. 474, 1 Am. & Eng. Ency. of Law, 615), it is contended by the appellant that there can be no presumption that the testator, by giving his wife $3,000, intended to lessen the amount given her by his will.

The result of deducting the amount of the gift from the legacy can

be reached logically and legally only by holding that: (a) As matter of law, ademption has occurred pro tanto; (b) or that the equitable doctrine of satisfaction is applicable; (c) or that the record and the will, properly construed, show that it was the intention of the testator that the subsequent gift should be a payment pro tanto of the legacy.

[1, 2] Ademption of a specific legacy is the extinction or withdrawal of it in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will, which prevents its passing by the will, from which an intention that the legacy should fail is presumed. Kenaday v. Sinnott, 179 U. S. 606, 617, 21 Sup. Ct. 233, 45 L. Ed. 339; Ford v. Ford, 23 N. H. (3 Foster) 212. The Georgia statute differs but little, if at all, from the general law on the subject:

"A legacy is adeemed or destroyed, wholly or in part, whenever the testator, after making his will during his life, delivers over the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given; or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy." Code of Georgia (1910) § 3908.

The language of this section strongly indicates that by it ademption is confined to specific legacies. The words, "delivers over the property or pays the money," indicate that the legacy designated certain property or certain money; so, also, the words, "when the testator conveys to another the specific property," and "places it out of the power of the executor to deliver the legacy."

[3-5] Usually, in states where the common law prevails, in the absence of a statute to the contrary, legacies are either general, demonstrative, or specific. Without attempting all-embracing definitions, which are difficult and often unsatisfactory, it may be said that: (1) A general legacy is a bequest chargeable upon the general estate, and not so given as to be distinguishable from other parts of the estate of the same kind; or it is one of a quantity merely, and includes all bequests not demonstrative or specific. Kelly v. Richardson, 100 Ala. 584, 13 South. 785. (2) A demonstrative legacy is a bequest of a thing or money not specified or distinguished from all others of the same kind, but payable out of a designated fund. Myers' Ex'rs v. Myers, 33 Ala. 85; Kenaday v. Sinnott, 179 U. S. 606, 618, 21 Sup. Ct. 233, 45 L. Ed. 339. (3) A specific legacy is a bequest of a particular thing or money specified and distinguished from all others of the same kind. Gilmer v. Gilmer, 42 Ala. 9, 16; Kenaday v. Sinnott, supra. Each of the three kinds of legacies is distinguished from the others by the incidents which attach to them respectively.

[6] We are at present concerned only with ascertaining to which of the three classes of legacies the one in question belongs, and whether or not it is subject to the doctrine of ademption. It is a bequest of "the sum of ten thousand dollars to be realized out of the proceeds of such life insurance as may be of force on my life at the time of my death." It is a legacy of a certain sum, to be paid out of, and made

a charge on, the proceeds of life insurance policies. A bequest of a certain sum, with direction that it be paid out of a particular fund, is a demonstrative legacy. Merriam v. Merriam, 80 Minn. 254, 83 N. W. 162; Harper v. Bibb, 47 Ala. 547; Kelly v. Richardson, supra; Blair v. Scribner, 67 N. J. Eq. 583, 60 Atl. 211; Ives v. Canby (C. C.) 48 Fed. 718. This view seems to be recognized as correct by the Supreme Court, for it quotes with approval:

"If a legacy be given, with reference to a particular fund only, as pointing out a convenient mode of payment, it is to be construed as demonstrative, and the legatee will not be disappointed, though the fund wholly fail." Kenaday v. Sinnott, supra, 179 U. S. 619, 21 Sup. Ct. 238, 45 L. Ed. 339.

In some of the cases, general and demonstrative legacies are referred to, without noticing a distinction between them. In such cases, as in the instant case, the important question being whether or not the legacy considered is a specific legacy, the usually recognized difference between general and demonstrative legacies is of no great importance.

In Byrne v. Hume, 86 Mich. 546, 49 N. W. 576, it was held that a bequest to the father and mother of the testator of a legacy, to be paid out of the testator's life insurance as soon as collected, is "a general legacy," payable out of the general assets of the estate, if the insurance is not collected. And in Re Snyder, 217 Pa. 71, 66 Atl. 157, 11 L. R. A. (N. S.) 49, 118 Am. St. Rep. 900, 10 Ann. Cas. 488, it is held that a bequest of a certain number of shares of stock, of a kind of which the testator owns a larger number, is "a general legacy," and not adeemed by a substitution, during the testator's lifetime, of other stock for that owned at the execution of the will. In each of these cases it was only important to ascertain whether or not the legacy was specific. It seems clear that the legacy in question here is not specific. According to the current of authority on the subject, preserving a proper and sometimes necessary distinction, it would be defined as a demonstrative legacy. It is a bequest of a fixed sum to be paid out of named assets. The sum is $10,000, while the assets on which it is charged amount to not less than $15,000. Such a legacy is not a specific, but a demonstrative, legacy, or a general legacy, according to some of the decisions, and as defined by the statutes in some states. Cases supra. See, also, Wilcox v. Wilcox, 13 Allen (Mass.) 256; Gelbach v. Shively, 67 Md. 498, 10 Atl. 247; In re Snyder, 217 Pa. 71, 66 Atl. 157, 11 L. R. A. (N. S.) 49, and note, 118 Am. St. Rep. 900, 10 Ann. Cas. 488; Johnson v. Conover, 54 N. J. Eq. 333, 35 Atl. 291.

The Georgia Code provides that legacies may be either general or specific. While it does not mention demonstrative legacies, it adheres to the usual rule that a legacy like the one in question here is not specific; the same section which divides legacies into "general or specific" providing that:

"A gift of money to be paid from a specified fund is nevertheless a general legacy." Code of Georgia (1910) § 3902.

The legacy in question not being specific, it is not subject to the doctrine of ademption, which is not applicable to either general or demonstrative legacies. In Kenaday v. Sinnott, supra, at page 621, the

court, having concluded that the legacy in question "should be regarded as in its nature a demonstrative legacy," held that it was not adeemed. The case indicates clearly an adherence to the view that the doctrine of ademption is applicable only to specific legacies. In Ives v. Canby (C. C.) 48 Fed. 718, there was a bequest of "$2,000 of the South Ward Loan of Chester, Pennsylvania," by a testator owning $10,000 worth of bonds, and the court held that it was a demonstrative legacy and refused to apply the doctrine of ademption. In Walton v. Walton, 7 Johns. Ch. (N. Y.) 258, 11 Am. Dec. 456, Chancellor Kent cites approvingly cases in which certain acts of the testator were held to be "no ademption, because the legacies were considered as pecuniary, and not specific, notwithstanding a reference was made to a particular part of the estate as the part out of which the testator thought it most convenient they should be paid." In Balliet's Appeal, 14 Pa. 451, 461, the court said:

"Ademption does not apply to demonstrative legacies; i. e., to legacies of so much money with reference merely to a particular fund for payment."

In 2 Redfield on Wills (3d Ed.) p. 150, § 16, a case is quoted approvingly, which holds that "a specific legacy is liable to ademption, but a demonstrative one is not." A legacy of $1,200, "contained in a bond and mortgage," was, in Giddings v. Seward, 16 N. Y. 367, held to be a demonstrative legacy. The court said it was "general, in the sense that it would not have been regarded as adeemed by the assignment of the bond and mortgage, or its extinction, in the lifetime of the testator." In Tipton v. Tipton, 1 Cold. (Tenn.) 252, it is held that the doctrine of ademption is not applicable to general or demonstrative legacies. The same principle is announced in other cases. Boykin v. Boykin, 21 S. C. 513, 532; Hood v. Haden, 82 Va. 588, 599; Gelbach v. Shively, supra.

The term "ademption" is sometimes used as a synonym of "satisfaction"; but this is inaccurate and leads to confusion. Ademption, properly so called, is applicable only to specific legacies, and operates independently of intention in case the specific thing given is, at the testator's death, no longer owned by him. Ademption of legacies depends on a rule of law. But the doctrine of satisfaction, it has been said, rests wholly upon intention, and may be applied to the extinction of general or demonstrative legacies. It is of equitable origin, and may be defined to be:

"The giving of a thing with the intention on the part of the donor, but not of necessity on the part of the donee, that it shall be taken, either wholly or in part, in extinguishment of some existing claim of the donee on the donor." 1 Underhill on Wills, § 437.

[7] The giving of a portion by the testator to a legatee subsequent to the will may operate as satisfaction of the entire legacy, or pro tanto, if the gift be less than the legacy. But the application of this rule to will cases is subject to the limitation that the testator must be the father of the legatee or stand in loco parentis to the legatee. Wallace v. Du Bois, 65 Md. 153, 4 Atl. 402; Carmichael v. Lathrop, 108 Mich. 473, 66 N. W. 350, 32 L. R. A. 232; 1 Underhill on Wills, §

444; 2 Redfield on Wills (3d Ed.) 446, 447. When such is the relation between the donor and donee, a presumption may arise, which, however, is subject to be rebutted, that the gift is in satisfaction of the legacy. In the instant case, it not appearing from the record that the testator was a parent of the legatee, or stood in loco parentis, no presumption arises that the subsequent gift was in part satisfaction of the legacy.

It seems clear that there is no rule based on the doctrine of ademption, or the equitable doctrine of satisfaction, that will justify the conclusion that the subsequent gift in the instant case can be treated as an extinction pro tanto of the legacy.

It remains to be considered whether or not it appears from the will, the circumstances surrounding the testator, and the subsequent act of the testator in making the gift, that it was his intention to satisfy in part the legacy to his wife.

[8] The authorities are innumerable which hold that a will is to be construed in accord with the intention of the testator, and that the construction of it depends, not so much upon any rigid technical rules, as it does on what appears by the will itself to have been the testator's intention. This rule is recognized in Georgia by statute. Code of Georgia (1910) § 3900. This intention is ascertained by an examination, not alone of a clause in question, but of the whole will.

The clause in question has been quoted, and it is a clear, unqualified bequest of $10,000, "to be realized out of the proceeds of such life insurance as may be of force on my life at the time of my death." The legacy is made a charge on a designated fund. The effect of this is not to imperil the legacy, if that fund should be exhausted or cease to exist. In that event, the legacy would have been paid out of the other assets of the estate; for a demonstrative legacy is not defeated by a failure of the fund out of which it is payable, but the deficiency is made up out of the personal estate not specifically bequeathed. Page on Wills, § 774; Lake v. Copeland, 82 Tex. 464, 17 S. W. 786; Smith v. Fellows, 131 Mass. 20. The effect, therefore, of the words used was to give to his wife the legacy in a way that she would receive it out of the insurance policies, if practicable, but, if they failed or lapsed, it would be paid to her out of his general estate. The legacy not being specific, if he had disposed of all the policies, or if they had all been forfeited for failure to pay premiums, the legacy would have been payable out of the general estate. The only effect of the language creating this bequest that took it out of the category of a general legacy is that it is made, first, a charge on a designated fund. It is required by law that it be paid, even if the fund fails. Should we construe words intended to secure payment so as to make them imperil complete payment? The testator uses words that make a demonstrative legacy, adding security to what would otherwise be a general legacy. We cannot construe those words to be less effective than a general legacy, without defeating the testator's manifest intention.

There is nothing in the record to show that the testator wrote any line or said any word that indicates an intention that the subsequent

gift to his wife should lessen the amount of the legacy. Are we authorized to presume, without proof, an intention in conflict with the legal effect of the will? We find nothing in the language of other parts of the will to create a presumption of such intention. Other property is devised and bequeathed to her, both real and personal, which shows an intention to provide for her liberally. The will also makes liberal provision for his son and only child. The will and record show the possession of a valuable estate, estimated to be worth about $200,000, and that he was amply able pecuniarily, without seeming injustice to any one, to give to his wife $3,000 in addition to the provision he had made for her in his will. Nothing in the record shows that, by word or deed, he indicated, when he gave her the life policy, that it was to be deducted from the legacy. Such fact, if it existed, was susceptible of proof even by parol. 1 Underhill on Wills, p. 599, § 448; May's Heirs v. May's Adm'r, 28 Ala. 141.

In item 4 of the will—the residuary clause in favor of his wife and his son—he provides that his son is to account for all advancements made to him after the date of the will, which are charged to him on the back of the will. There is no provision in reference to any future gift that he might make to his wife, his other legatee. Failure to mention his wife in that connection at least left him free to make gifts to her not in satisfaction of her legacy. Provisions that subsequent gifts shall or shall not be charged are frequent, and, when made in the will, they are, of course, controlling. Adams v. Cowen, 177 U. S. 471, 20 Sup. Ct. 668, 44 L. Ed. 851; 1 Underhill on Wills, § 447. When the will is silent on the subject, it, of course, stands for enforcement as written and properly construed.

There being no proof in the record of the value of the specific property devised and bequeathed to the wife and son, respectively, it cannot be assumed, for the purpose of arriving at his intention on the question at issue, that he intended to provide for the wife and son in equal portions. Besides, it is alleged in the bill that the bequests to the wife are of the value of about $125,000, and that the bequests to the son are of the value of about $75,000. This averment of values is neither denied nor admitted by the answer, and there is no evidence in the record on the subject.

It is insisted that the case of Beermann v. De Give, 112 Ga. 614, 37 S. E. 883, is a controlling authority in the instant case. Beermann, by his will, gave his wife $10,000 insurance carried by him, or, in default of such insurance, she was to have $10,000 out of his estate. There was, in fact, a policy on his life for that sum, but it was not payable to his estate. One half of it was payable to his wife, and the other half to his son. He had no right whatever to dispose of it in his will. After the testator's death, the wife received one-half of the proceeds of the policy. She claimed that she should receive under the will $10,000 in addition. The court held as follows:

"Looking to the whole will for the intention of the testator, it is clear that his purpose was to give his wife $10,000 in addition to one-fifth of the residuum of his estate. It is equally certain that he was under the impression that he had the right to make a testamentary disposition of the proceeds of an insurance policy on his life, and upon which he paid the premiums, although

it was not payable to his legal representative, and, in making his will, that he intended to deal with any such policy that might exist then, or at the time of his death, as his property. The will shows that it was his desire that his wife should have $10,000 of insurance money, and, 'in its absence, that a like amount should be paid her by his executor from other sources. It is therefore our opinion that, in order to carry out the testamentary scheme, the $5,000 paid to Mrs. Beermann upon the life insurance policy should be treated as a part of the testator's estate, and that the executor should pay her, from the general funds of the estate, an additional sum of $5,000, thus enabling her to obtain the $10,000 legacy which the testator obviously intended that she should receive."

The will, it will be noted, gave her only $10,000. She was to have it out of the insurance, if there was that sum of insurance money; otherwise, she was to have it out of the estate. As a matter of fact, no insurance existed which the testator had a right to bequeath. One-half of the policy was owned by Mrs. Beerman. The rule is that, if a testator disposes of property owned by a beneficiary under the will, such beneficiary must either relinquish his right to such property, or he must relinquish his rights under the will. He must accept the will as a whole, or not at all; that is, if he claims under the will, he must recognize the testator's right to dispose of the property, although he, the beneficiary, in fact owned it. Smithsonian Institution v. Meech, 169 U. S. 398, 414, 18 Sup. Ct. 396, 42 L. Ed. 793; Utermehle v. Norment, 197 U. S. 40, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520; Van Schaack v. Leonard, 164 Ill. 602, 45 N. E. 982; 2 Underhill on Wills, § 726; Page on Wills, § 714. The Georgia Code recognizes this equitable doctrine of election. Code of Georgia (1910) § 3910. The effect of the decision in Beermann v. De Give, supra, was to enforce this rule. Mrs. Beermann was forced by it, in effect, to recognize the testator's right to devise the $5,000 interest in the policy which she owned, and it was treated as a part of the testator's estate, and as part of the $10,000 bequeathed to her; the court allowing her $5,000 more, which made the $10,000 legacy bequeathed to her. The case did not, as in the instant case, involve any question of ademption or satisfaction arising from a payment made subsequent to the will by the testator to the legatee; nor did it involve any question of the intention with which such payment was made, for in the Beermann Case the testator made no such payment. Nor does the instant case involve any question arising from the testator's bequeathing property that did not belong to him, but that was owned by a beneficiary under the will, which was the controlling fact in the Beermann Case.

Considering the record before us, we are of the opinion that it does not present a case for the application of ademption or satisfaction pro tanto, and that it does not appear that it was the intention of the testator that his subsequent gift to his wife was to extinguish in part the legacy to her.

On the appeal the decree is reversed, in so far as it decreases the legacy of $10,000 to the appellant, and in all other respects it is affirmed. On the cross-appeal, as to errors therein assigned, the decree is affirmed. The appellee is taxed with the costs of the appeal, and the cross-appellant with the costs of the cross-appeal. And it is so ordered.