[S. F. No. 6474.   Department Two.—November 26, 1913.]

In the Matter of the Estate of MARY E. D. GOODFELLOW,
    Deceased.   SARA A. D. McKEE et al., Appellants, v.
    CALIFORNIA ANNUAL CONFERENCE OF THE
    METHODIST EPISCOPAL CHURCH, Respondent.

WILLS—SPECIFIC LEGACY—GIFT OF CERTAIN SUM TO BE DERIVED FROM
    ESTATE OF FATHER OF TESTATRIX.—A direction in a will to the
    executors "to proceed to obtain the sum of five thousand dollars
    from" the share of the testatrix in the estate of her deceased father,
    "and place it in the care of the Methodist Episcopal Conference, . . . :
    said conference being pledged never to use said five thousand dollars.
    except as part of an endowment fund for a school for Methodist
    ministers," constitutes a specific legacy.

ID.—ADEMPTION OF LEGACY—WHAT CONSTITUTES.—If the testatrix, long
    prior to her death, receives and disposes of her share in her father's
    estate, such legacy is adeemed.

ID.—DEFINITION OF ADEMPTION—MANNER OF EFFECTING ADEMPTION.—
    Ademption is merely one of the ways in which a legacy lapses.
    Ademption of a specific legacy is the extinction or withdrawal of it
    in consequence of some act of the testator equivalent to its revoca-
    tion, or clearly indicative of an intention to revoke.   The ademp-
    tion is effected by the extinction of the thing or fund bequeathed,
    or by a disposition of it subsequent to the will, which prevents its
    passing by the will, from which an intention that the legacy should
    fail is presumed.

APPEAL from a decree of distribution of the Superior
Court of the City and County of San Francisco.   J. V. Coffey,
Judge.

The facts are stated in the opinion of the court.

J. S. Hutchinson, for Appellants.

J. E. White, for Respondent.

MELVIN, J.—This appeal is taken from that part of the
decree of distribution which gives to the California Annual
Conference of the Methodist Episcopal Church a legacy of
five thousand dollars, together with interest.

Mary E. D. Goodfellow died testate August 21, 1907. Her will was dated February 19, 1886. By the first provision of the will the sum of twelve thousand dollars was bequeathed to William Goodfellow, husband of the testatrix, the income from that amount to be paid to him annually by the executors of Mrs. Goodfellow's estate. William Goodfellow predeceased his wife, so that legacy lapsed. The three provisions of the will with which we are here concerned are the second, the fourteenth, and the seventeenth, which are as follows:

"2. It is well known that my father Revd. John Dempster intended to give $20,000.00 toward establishing a Theological School on the Pacific Coast, under the direction of the Meth. E. Church, and as his heirs have not yet been able to disentangle the estate, so as to make this gift possible, therefore, I wish my executors, after securing the $12,000.00 for W. Goodfellow, to proceed to obtain the sum of $5000.00 from my share of Dr. Dempster's estate, and place it in the care of the Methodist Episcopal Conference which includes San Francisco of California within its bounds. Said conference being pledged never to use said $5000.00 except as part of an endowment fund for a school for Methodist ministers.

"And I hereby express my hope that my coheirs, viz.: Clancey John Dempster, Sara Dempster McKee and Killian Van Rensalaaer Lansingh, who was the husband of Mrs. Orea Dempster Lansingh and is now her heir and executor, will all soon be able to add their respective shares to this fund in order to carry out the purpose in which our father John Dempster was so much interested."

"14. I direct that my executors shall first, and as soon as possible, arrange to secure the $12,000.00 for support of William Goodfellow, and the $5000.00 for endowment fund of Preacher's School in California, then as funds will allow, pay the bequests to Mrs. N. G. Boyd and Sam Beer, first settling with my coheirs the debts I owe to the Dempster estate. I beg the consent of the other heirs of the estate to this plan of settling."

"17. I wish to have it distinctly understood that my executors are to carry out these provisions by amicably arranging with the other heirs of the undivided Dempster estate, to sell and divide as rapidly as is consistent with the interest of all concerned, viz.: my heirs and legatees."

The court found, among other things, that the legacy of the California Annual Conference of the Methodist Episcopal Church had not lapsed; that such theological school as is mentioned in provisions "2" and "14" of the will had been established under the direction of the conference which includes San Francisco, and that the board of trustees of the said conference had passed a resolution agreeing to accept the bequest upon the terms and conditions mentioned in the will. As a conclusion of law the court determined that the said California Annual Conference was entitled to the legacy of five thousand dollars with interest at the rate of seven per cent per annum from the date of the death of the testatrix. There were also the following findings which were amply supported by evidence or stipulated facts: "That, long prior to the death of the said decedent, the heirs of said Rev. John Dempster, mentioned in the second provision of said will, disentangled his estate, and the said decedent and the said other heirs received their full share thereof; that, thereafter, the said Clancey John Dempster and Killian Van Rensalaaer Lansingh died; that neither of them, in his lifetime nor by will, nor otherwise, made any provision for such a theological school; that it is not the intention or desire of any of their heirs to do so; that said Sara Dempster McKee has never made any such provision, and does not desire or intend to do so."

Appellants are of the opinion that the legacy in question was adeemed by the action of the testatrix in receiving and disposing of her distributive share of her father's estate. It will be noticed that the very first direction to the executors is "to obtain the sum of $5000.00 from my share of Dr. Dempster's estate and place it in the care of the Methodist Episcopal Conference," etc. If this clause stood alone there would be no difficulty in classifying the legacy as being specific. It falls within the definition of a specific legacy as that "of a particular thing, specified and distinguished from all others of the same kind belonging to the testator." (Civ. Code, sec. 1357, subd. 1.) The will specifies the particular five thousand dollars and the use to which *"said $5000.00"* is to be applied. It does not come under the second subdivision of section 1357 of the Civil Code. Although a certain fund is indicated there are no general words which support any gift except of the particular sum of money derived from the es-

tate of the father of the testatrix. The legacy, so far as the second provision of the will is concerned, is therefore not a demonstrative legacy. The question then arises: Do the subsequent references to the legacy take it from this class? The seventeenth provision is a direction to the executors to arrange to secure the money for the support of the husband of the testatrix "and the $5000.00 for endowment fund of Preachers School in California." This language is general, it is true, but it must be read in connection with the second provision of the will, and so read it does not enlarge the scope of the gift itself. It is merely an instruction to the executors with respect to the order in which they might pay these legacies. The whole of provision seventeen is directed to a method whereby funds might be promptly derived from the estate of Dempster. It does not operate to make the legacy general or demonstrative. The words "$5000.00 for endowment fund" are merely descriptive and are not words of gift. The seventeenth provision of the will emphasizes the position of appellants that the scheme of Mrs. Goodfellow's bounty was entirely based upon the supposition that the estate of her father would be undistributed at the time of her death. Reading the will by its four corners we are impressed with the conviction that the testatrix desired to carry out her father's plan of devoting twenty thousand dollars of his estate to the endowment of a theological school. She was willing to do her part out of the money inherited from him, and for that reason dedicated five thousand dollars out of the very moneys due her from his estate to that purpose, hoping and believing, however, that the other heirs would do their part to furnish the sum which her father had wished thus to apply. Her desire was to do with the money that he had accumulated exactly what he would have done, not to carry out any plan of her own with a part of her estate. She wanted to create a fund which, with the addition of moneys which she hoped would be contributed by her coheirs from the same source, would carry out her father's purposes. The legacy, it seems to us, was clearly specific. We are not unmindful of the rule that courts in general are averse to construing legacies as specific, supported by such authorities as *Kenaday v. Sinnott*, 179 U. S. 618, [45 L. Ed. 339, 21 Sup. Ct. Rep. 233]. We also have in mind the fact that courts look with favor upon

charitable donations.   (*Estate of Willey,* 128 Cal. 12, [60 Pac. 471] ; *Estate of Dwyer,* 159 Cal. 687, [115 Pac. 242].) But we fail to find any words of donation in this will referring to the legacy of five thousand dollars except those directing that *the sum* raised from Mrs. Goodfellow's share in Dr. Dempster's estate be placed *in the care* of the conference, which should be pledged never to use *said $5000.00* except as specified.   If there had been general words of donation and the naming of the estate of Dr. Dempster as a source from which the legacy should be paid, there would be room for contention that the legacy was demonstrative; but we have no such will before us.

While the decisions are by no means uniform, the weight of authority supports the view that this was a specific legacy.

In *Chase* v. *Lockerman,* 11 Gill & J. (Md.) 185, [35 Am. Dec. 280], it was held that a bequest of moneys to be received from a decree in chancery was a specific legacy.

*Smith* v. *McKitterick,* 51 Iowa, 551, [2 N. W. 390], was a case where the court construed the bequest of ''$2000 received from the estate of my father.''   It was held that the character of the bequest was specific.

*In re Zeile,* 74 Cal. 130, [15 Pac. 455], is authority for the interpretation of legacies to be paid out of the sale of certain bank stock as specific.

Other cases cited by appellants supporting this view are *Nusly* v. *Curtis,* 36 Colo. 464, [118 Am. St. Rep. 113, 10 Ann. Cas. 1134, 7 L. R. A. (N. S.) 592, 85 Pac. 846] ; *Gilbreath* v. *Executors of Winter,* 10 Ohio, 68; *Georgia Infirmary etc.* v. *Jones,* 37 Fed. 750; *Smith's Appeal,* 103 Pa. St. 561; *Rogers* v. *Rogers,* 67 S. C. 168, [100 Am. St. Rep. 721, 45 S. E. 176] ; *In re Tillinghast,* 23 R. I. 121, [49 Atl. 634] ; *Ludlam's Estate,* 13 Pa. St. 188.

Nearly all of the cases cited by respondent deal with wills in which, although the legacies were to be paid out of designated funds, the testators expressed separate and independent intentions that the legatees should receive the amounts bequeathed to them, at all events.   Such was the ruling of the supreme court of the United States in a case in which a bequest of funds on deposit was made but part of the money in bank was expended after the making of the will, in the purchase of bonds.   The change in the form of property did not defeat

the evident purpose of the testator that his wife should receive a certain value from his possessions. (*Kenaday* v. *Sinnott,* 179 U. S. 618, [45 L. Ed. 339, 21 Sup. Ct. Rep. 233].)

In *Tifft* v. *Porter,* 8 N. Y. 516, the supreme court of New York (three of the justices dissenting) held that where a testator who owned three hundred and sixty shares of stock in a certain bank bequeathed two hundred and forty shares to one legatee and one hundred and twenty shares to another, the legacies were not specific but demonstrative. It is conceded in the opinion that if the language of the will had specified a certain number of "my shares" instead of a certain number of "shares" the legacies would have been specific and the learned author of the opinion differentiates the case from *Ludlam's Estate,* 13 Pa. St. 188. It will be seen at a glance that the will there considered was entirely different from the one before us.

In *Gelbach* v. *Shively,* 67 Md. 499, [10 Atl. 247], while holding that legacies payable to the brother and sister of the testator out of his share of his father's estate were demonstrative, yet the court decided that they were not to be satisfied out of the general assets of his estate. The father's estate had been distributed and the brother and sister of George Gelbach, Jr., deceased, had received his share of that estate, in equal portions, in partial satisfaction of the bequests by him to them. The sum so received did not equal the amount of the legacies to the brother and sister specified in the will of George Gelbach, Jr., and the supreme court of Maryland held that the difference was not payable from the general assets of the estate. Surely that authority does not support the position of the respondent in this appeal.

In *Ives* v. *Canby,* 48 Fed. 718, the will specified "two thousand dollars of the South Ward Loan of Chester, Pennsylvania." This was held to be a demonstrative legacy (the bonds representing the interest of the testatrix in the loan having been paid prior to her death). But the court said: "Had the legacy to the plaintiff been restricted to $2,000 'of my South Ward Loan of Chester,' or had the testatrix given $2,000 of the debt belonging to her on one of the bonds in her possession at the date of her will, particularly describing the bond by number and date, showing that she intended to give to the plaintiff that amount of a specified debt, a different case

would have been presented.'' It is evident that in *Ives* v. *Canby* the general words of bequest differentiated the legacy from those which, by narrowing the source of the bounty to a particular thing or things, are thereby made specific.

In *Welch's Appeal*, 28 Pa. St. 365, a legacy to a daughter was to be paid out of the profits upon certain real estate given to a son under the terms of the will. Before his death the testator deeded the property to the son. It was held that the legacy to the daughter was demonstrative and that it was not adeemed by the father's action. There was some doubt if the deed to the realty had ever been delivered to the testator's son. Nothing in that case is in conflict with our decision in the one at bar.

In *Kramer* v. *Kramer*, 201 Fed. 250, [119 C. C. A. 482], the court held that a bequest of a certain sum to be realized from policies of life insurance which should be in force at the time of the testator's death was demonstrative and was not cut down by his action, after the execution of his will, in making the beneficiary the payee of one of the certificates of insurance. The case is of no particular value in solving the principal problem now before us. Indeed, no one of the authorities brought to our attention by respondent is in substantial conflict with those which sustain the theory of appellants.

But respondent's counsel says that the question of ademption was not raised at the hearing below. While that term was not used in the pleadings, the issue of ademption was clearly raised and litigated. The petition stated fully the theory of appellants that the legacy had lapsed, and ademption is merely one of the ways in which a legacy lapses. One of the best definitions is that found in *Kramer* v. *Kramer*, 201 Fed. 250, [119 C. C. A. 482] : ''Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed.'' This definition accurately fits the facts of the case at bar. Long before Mrs. Goodfellow's death, **Dr.** Dempster's estate had been finally settled; she had re-

ceived her share of it; and therefore her executors could not "proceed to obtain the sum of $5000.00" from said estate "and place it in the care of the Methodist Episcopal Conference" and pledge said conference "never to use *said* $5000.00" except as an endowment fund for a school for Methodist ministers.

That part of the decree from which this appeal is taken is reversed, with instructions to the superior court to enter judgment in accordance with the views herein expressed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.