[Civ. No. 2804. Fourth Dist. July 14. 1941.]

Estate of MARY SORENSEN, Deceased. MRS. FRANK CLARE, Appellant, v. D. S. JONES et al., Respondents.

Frederick E. Stone for Appellant.

N. Lindsay South and Lawrence W. Young for Respondents.

MUNDO, J., *pro tem.*—Mary Sorensen executed an holographic will as follows:

"MY LAST WILL

Dated Sept 18 — 1939

"TO WHOM IT MAY CONSERN

"My home goes to C. K. Sorensen as a home for him during his life—after that to go to D. S. Jones—Mrs. Frank Clare

George Camp to be divided 3 ways. The home to be kept free from *morgages* and indebtedness. Taxes to be kept paid and property to be kept up. If Mr. C. K. Sorensen does not at any time wish to keep same for a home it is to be sold and divided 4 ways equal D. S. Jones, C. K. Sorensen. Mrs. Frank Clare—Mr. Geo Camp to share alike. if D. S. Jones dies before the others his share goes to Mrs. Frank Clare. My three ½ brothers to *recive* 1 dollar each. or any one contesting this will to receive 1 dollar. All Jewelry and personal effects and any house hold things she may want go to Mrs. Frank Clare.

"All bills to be paid

"Hoping this meets with the approval of all concerned.

"Signed

"MARY SORENSEN

"Rt. 1 box 473

"Fresno, Cal."

On November 13, 1939, Mary Sorensen sold the property referred to in her will as "my home" and the purchase price was delivered to Mary Sorensen in the form of a check which was in her possession uncashed at the time of her death on December 8, 1939. The check was delivered to the administrator. Upon the hearing of the petition for distribution the court concluded that the funds representing the sale of "my home" should be distributed in four equal shares to the parties named in the will.

Mrs. Frank Clare appeals from the decree of distribution on the ground that the amounts decreed to D. S. Jones, C. K. Sorensen and George Camp, were a part of the residue and remainder of the estate and should have been distributed to her as residuary legatee.

■ The question to be decided is whether the conveyance of the real property devised in the will by the testatrix after the execution of the will constituted an ademption of the devise of said real property.

"Ademption of a specific legacy is the extinction or withdrawal of it in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will, which prevents its passing by the will, from which an intention that the legacy should fail is presumed."

(*Kramer* v. *Kramer*, 201 Fed. 248, 253 [119 C. C. A. 482].)
See, also, *Estate of Goodfellow*, 166 Cal. 409 [137 Pac. 12].

This definition accurately fits the facts of the case at bar.
The month before Mary Sorensen died she had sold the property which was mentioned in the will and thus the ademption was effected by the disposal of the property, by an act which prevented its passing by the will.

Section 73 of the Probate Code provides:

"If the instrument by which an alteration is made in the testator's interest in any property previously disposed of by his will expresses his intent that it shall be a revocation, or if it contains provisions wholly inconsistent with the terms and nature of the testamentary disposition, it operates as a revocation thereof, unless such inconsistent provisions depend on a condition or contingency by reason of which they do not take effect."

When Mary Sorensen conveyed the property to the purchaser the conveyance operated as a revocation of the testamentary disposition. As was said in *Estate of Benner*, 155 Cal. 153, 155 [99 Pac. 715]:

"The case presented is one of a devise of land, it mattering not whether the devise be considered special or general, and a sale of that land before the death of the testator. Such a sale being wholly inconsistent with the devise, operates as a revocation of it, as contemplated by section 1304 of the Civil Code." (Now Probate Code, section 73.)

Another rule applies when the will directs the sale of specific property after the testator's death and payment of the proceeds to a designated legatee. In such event, the latter, in case a sale was effected by the testator in his lifetime and the proceeds are identifiable, is held to be entitled to the money, the sale by the testator being deemed to have been made merely to facilitate the creation of the fund which was designed for the legatee. (*Estate of Dwyer*, 159 Cal. 664 [115 Pac. 235].)

In the case at bar the will did not direct the executor to sell the specific property after the testatrix's death and divide the proceeds. Here the testatrix made a specific devise of her home, devising the same to C. K. Sorensen for his lifetime with the remainder over to D. S. Jones, Mrs. Frank Clare and George Camp. The administrator with the will annexed had no authority to sell the property or to divide the proceeds.

If, after the property was distributed to Mr. C. K. Sorensen in accordance with the terms of the will and during his lifetime he desired to sell the property and divide the proceeds four ways, he had the privilege of so doing, but the property had to be distributed first under the terms of the will. When the property was sold prior to decedent's death there was nothing to pass under the will so far as the specific devise of the home was concerned. Mr. Sorensen could not make the election as to whether he would use it for his lifetime and allow the remainder over to the other three or sell it and divide the proceeds. The sale constituted an ademption and there was nothing to pass to the devisees.

The question now arises, to whom should the court distribute the money that came from the sale of "my home"? No provision for it, of course, is made in the will for the reason that when the will was made the testatrix apparently had no idea of selling the property. After she had sold the property and adeemed the specific devises, she passed away before having an opportunity to execute a codicil or a new will in conformity with the ademption. There is no residuary clause in the will which would direct the distribution of this money. The clause in the will: "All Jewelry and personal effects . . . go to Mrs. Frank Clare" cannot govern, for it is obvious that this clause refers to clothing and ornaments or any other small articles which usually attend the person, and is not a general residuary clause. (*Estate of Lovejoy*, 38 Cal. App. (2d) 69 [100 Pac. (2d) 547].)

In *Barney* v. *May*, 135 Minn. 299 [160 N. W. 790], the court said:

"The word 'personal,' used with 'effects,' much restricts its meaning. In common understanding the expression 'personal effects,' without qualifying words, includes only such tangible property as attends the person, or, as variously stated, 'such tangible property as is worn or carried about the person' (*Brandon* v. *Yeakle*, 66 Ark. 377, 50 S. W. 1004; *Lippincott's Estate*, 173 Pa. 368, 34 Atl. 58), or 'goods and items of property having a more or less intimate relation to the person'. . . . But to hold that the term 'personal effects,' as used here, includes a large residue of money and securities, nothing of which she then owned, and which she evidently did not have in mind, would do violence to the language of the will. This view is supported by the authorities."

We hold that the will does not dispose of the money derived from the sale of ''my home''.

When the appeal is taken on the judgment roll alone, this court will reverse a decree of distribution when the error appears as it does here on the face of the record.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.