[L. A. No. 27733. In Bank. Jan. 15, 1965.]

Estate of MARY MASON, Deceased. SECURITY FIRST NATIONAL BANK, as Executor, etc., Petitioner and Respondent, v. ROBERT T. FAIRBANK, Objector and Appellant; KATHERINE McKENNA, Beneficiary and Respondent.

214

Ardy V. Barton for Objector and Appellant.

Griffith & Thornburgh, Charles B. Voorhis, II and Yale B. Griffith for Petitioner and Respondent and Beneficiary and Respondent.

TRAYNOR, C. J.—Robert T. Fairbank appeals from a decree of final distribution of the estate of Mary Mason. The testatrix devised her home and most of its contents to Robert's mother if she outlived the testatrix and if not, then to Robert. Robert's mother predeceased the testatrix.

Several years after executing her will, the testatrix became mentally incompetent, and the Security First National Bank was appointed guardian of her estate. With the approval of the court the guardian sold the testatrix' home and kept the proceeds of the sale, approximately $21,000, in a separate account. It spent all but $556.66 of this account to support the testatrix, who died without regaining competency.

The trial court decreed that there was a partial ademption of Robert's gift to the extent the proceeds from the sale of the testatrix' home were spent during the guardianship and therefore ordered that only the unexpended proceeds, $556.66, be distributed to him. It ordered distribution of the remainder of the estate, $6,808.08, to the residuary legatees, who are respondent Katherine McKenna, a friend of the testatrix, and eight nieces and nephews.

Robert contends that, in the absence of proof that the testatrix intended an ademption, he is entitled to have the specific gift to him satisfied, so far as estate assets permit, before distribution of any residue.

█ " 'Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed.' " (*Estate of Goodfellow,* 166 Cal. 409, 415 [137 P. 12], quoting from *Kramer* v. *Kramer* (5th Cir. 1912) 201 F. 248, 253 [119 C.C.A. 482].) █ A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail. (*Estate of Stevens,* 27 Cal.2d 108, 115-116 [162 P.2d 918]; *Estate of Moore,* 135 Cal.App.2d 122, 130-134 [286 P.2d 939]; *Estate of MacDonald,* 133 Cal.App.2d 43, 45, 48 [283 P.2d 271]; *Estate of McLaughlin,* 97 Cal.App. 485, 489 [275 P. 875]; see *Estate of Calori,* 209 Cal.App.2d 711, 712 [26 Cal.Rptr. 281]; *Estate of Cline,* 67 Cal.App.2d 800, 805-806 [155 P.2d 390]; 43 Cal.L.Rev. 151.) Accordingly, when the guardian of a mentally incompetent testator has sold property subject to a specific gift in his ward's will, the beneficiary is awarded the proceeds of the sale. (See *Wilmerton* v. *Wilmerton* (7th Cir. 1910) 176 F. 896 [100 C.C.A. 366, 28 L.R.A. N.S. 401]; *Lewis* v. *Hill,* 387 Ill. 542 [56 N.E.2d 619]; *In re Estate of Bierstedt,* 254 Iowa 772

[119 N.W.2d 234]; *Walsh* v. *Gillespie,* 338 Mass. 278 [154 N.E.2d 906]; *Bishop* v. *Fullmer,* 112 Ohio App. 140 [175 N.E. 2d 209]; *Duncan* v. *Bigelow,* 96 N.H. 216 [72 A.2d 497]; *In re Cooper,* 95 N.J.Eq. 210 [123 A. 45, 30 A.L.R. 673]; 51 A.L.R.2d 770; 6 Page, Wills (3rd rev. ed. 1962) § 54.18, pp. 271-274. Contra *Matter of Ireland,* 257 N.Y. 155 [177 N.E. 405]; *Hoke* v. *Herman,* 21 Pa. 301.) ▮ The reasons for refusing to find an ademption upon the guardian's sale are: (1) The incompetent testator lacks intent to adeem (see *Wilmerton* v. *Wilmerton, supra,* 176 F. at pp. 899-900) and the opportunity to avoid the effect of an ademption by making a new will. (See *Walsh* v. *Gillespie, supra,* 338 Mass. at p. 283; 74 Harv.L.Rev. 741, 745.) (2) A contrary rule would allow the guardian, by changing the form of guardianship property, to determine the distribution of the estate. (See *In re Cooper, supra,* 95 N.J.Eq. at p. 213; *In re Estate of Bierstedt, supra,* 254 Iowa at p. 778; 6 Page, Wills, *supra,* at pp. 273-274.)

Respondents contend, however, that when proceeds from the sale of specifically devised property have been consumed during guardianship, ademption necessarily occurs. We do not agree with this contention. ▮ Although a specific testamentary gift is adeemed regardless of the testator's intention when the specific property has been disposed of *by the testator* and cannot be traced to other property in the estate (see Prob. Code, § 161, subd. (1); *Estate of Buck,* 32 Cal.2d 372 [196 P.2d 769]; *Estate of Goodfellow,* 166 Cal. 409 [137 P. 12]), or when *the testator* has placed the proceeds of such property in a fund bequeathed to another (see *Estate of Babb,* 200 Cal. 252 [252 P. 1039]), it does not follow that there is an ademption when the specific property has been sold and the proceeds spent *by a guardian* during an incompetency from which the testator does not recover.

To permit such an ademption would allow the guardian to destroy his ward's testamentary plan even though the guardian was acting to protect the ward's economic interests. It is true, of course, that whenever it is necessary to dispose of the ward's assets to manage his estate properly and provide for his needs, his testamentary scheme may be adversely affected. Moreover, if there were no better alternative, we might be persuaded by the decisions from other jurisdictions holding that there is a *pro tanto* ademption to the extent that the proceeds of a sale of a specific gift have been used by the guardian for the care of an incompetent testator. (See *Lewis* v. *Hill,* 387 Ill. 542 [56 N.E.2d 619]; *In re Estate of Bierstedt,* 254

Iowa 772 [119 N.W.2d 234]; *Walsh* v. *Gillespie*, 338 Mass. 278 [154 N.E.2d 906]; *Morse* v. *Converse*, 80 N.H. 24 [113 A. 214]; *In re Barrow's Estate*, 103 Vt. 501 [156 A. 408]; 51 A.L.R.2d 770, 797.) ■ Although the Legislature has provided no specific alternative to cover this situation, it has set forth rules to govern the abatement of testamentary gifts when the assets of the estate are insufficient to satisfy them in full. (Prob. Code, §§ 750-753.) We believe that those rules provide a better alternative than the rule of *pro tanto* ademption and that they therefore constitute an appropriate model for this court to adopt. (*Decorative Carpets, Inc.* v. *State Board of Equalization*, 58 Cal.2d 252, 256 [23 Cal.Rptr. 589, 373 P.2d 637]; see also Model Probate Code, § 231 (Simes 1946).) Thus, expenses of guardianship during an incompetency from which a testator does not recover are not substantially different from expenses and debts of a decedent's estate. Indeed, if guardianship expenses are not paid before the death of the incompetent, they become debts of his estate. It should make no difference in the distribution of an estate that a guardian rather than an executor paid those expenses, for it is no more the function of a guardian than it is of an executor to modify the decedent's testamentary plan. Accordingly, we adopt for the distribution of the estate in such a case the rules set forth in sections 750-753 of the Probate Code.

■ When specifically devised property has been sold and the proceeds used to pay debts and expenses, the devisee may have his gift redeemed from the remainder of the estate. Section 753 of the Probate Code provides: "When property given by will to persons other than the residuary devisees and legatees is sold for the payment of debts and expenses or family allowance, all the devisees and legatees must contribute according to their respective interests to the devisee or legatee whose devise or legacy has been sold, and the court, when distribution is made, must settle the amount of the several liabilities and decree the amount each person shall contribute, and reserve the same from his distributive share for the purpose of such contribution."

"[T]he provision of section 753 that 'all the devisees and legatees must contribute according to *their respective interests* to the devisee or legatee whose devise or legacy' (italics added) has been appropriated to the payment of debts contemplates interest as measured by the class of the various devises and legacies (i.e., whether general or specific, etc.; [citation]). ..." (*Estate of Stevens*, 27 Cal.2d 108, 119 [162 P.2d 918].)

Thus, the residuary legatees must contribute in full to satisfy Robert's specific gift (Prob. Code, § 751), since the testatrix' will does not provide that her home is to be appropriated for the payment of debts and expenses. (Prob. Code, § 750.)

The decree is reversed.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

The application of petitioner and respondent for a rehearing was denied February 10, 1965.