[Civ. No. 22362. First Dist., Div. Two. Mar. 15, 1965.]

Estate of ELISABETH D. PACKHAM, Deceased. AMY BUTLER TENNANT, Petitioner and Appellant, v. GORDON WILSON DENNIS et al., Objectors and Respondents.

Moerdyke, Anderson & Joyce and John C. Horning, Jr., for Petitioner and Appellant.

Bacigalupi, Elkus & Salinger, Michael B. Foley and J. Clark Benson for Objectors and Respondents.

TAYLOR, J.—Amy B. Tennant, the niece of the predeceased husband of the testatrix, appeals from a decree denying her interest in the proceeds of the sale of certain real property of the estate of Elisabeth B. Packham. The only question on appeal is whether the trial court properly concluded that appellant's specific devise was adeemed through the sale of the real property by the guardian of the incompetent testatrix.

The facts are not in dispute. The relevant portion of the will executed in 1948 devised to appellant "Any interest in the residential real property known as 57 Amador Avenue, Atherton, California, which I may own at the time of my death, or a sum equal to the net proceeds of sale of any said interest occurring during the administration of my estate. . . ." The other significant portions of the will impose on the residuary estate a charge of $8,000 in favor of respondents and cancel an indebtedness of respondent, Gordon W. Dennis.

In 1950, when the testatrix was declared incompetent and the Bank of America appointed as her guardian, her estate was valued in excess of $100,000. The testatrix remained incompetent until her death on December 14, 1962. On May 15, 1962, the guardian sold the Atherton property devised to appellant. The sale was duly confirmed by court order. The net proceeds from the sale were $27,000 and about $25,000 remains in the possession of the executors of the estate.

It is not necessary to discuss the various authorities cited by the parties, as the issue here presented was recently resolved by the Supreme Court in the *Estate of Mason*, 62 Cal.2d 213 [42 Cal.Rptr. 13, 397 P.2d 1005]. The court there held that in the absence of proof that the testatrix intended an ademption, the sale by the guardian does not adeem a specific bequest. The court said at page 216: "The reasons for refusing to find an ademption upon the guardian's sale are: (1) The incompetent testator lacks intent to adeem (see

*Wilmerton* v. *Wilmerton, supra,* 176 F. at pp. 899-900 [100 C.C.A. 366, 28 L.R.A. N.S. 401]) and the opportunity to avoid the effect of an ademption by making a new will. (See *Walsh* v. *Gillespie, supra,* 338 Mass. at p. 283 [154 N.E.2d 906]; 74 Harv.L.Rev. 741, 745.) (2) A contrary rule would allow the guardian, by changing the form of guardianship property, to determine the distribution of the estate. (See *In re Cooper, supra,* 95 N.J.Eq. at p. 213 [123 A. 45, 30 A.L.R. 673]; *In re Estate of Bierstedt, supra,* 254 Iowa at p. 778 [119 N.W.2d 234]; 6 Page, Wills, *supra,* at pp. 273-274.)

". . . Although a specific testamentary gift is adeemed regardless of the testator's intention when the specific property has been disposed of *by the testator* and cannot be traced to other property in the estate (see Prob. Code, § 161, subd. (1); *Estate of Buck,* 32 Cal.2d 372 [196 P.2d 769]; *Estate of Goodfellow,* 166 Cal. 409 [137 P. 12]), or when *the testator* has placed the proceeds of such property in a fund bequeathed to another (see *Estate of Babb,* 200 Cal. 252 [252 P. 1039]), it does not follow that there is an ademption when the specific property has been sold and the proceeds spent *by a guardian* during an incompetency from which the testator does not recover." This reasoning applies to the instant case, as it was here stipulated that the testatrix lacked testamentary capacity from 1950 until her death.

The only question remaining is whether the particular language of the devise to appellant provides a ground for distinguishing *Estate of Mason, supra.* The trial court here concluded from the will's terminology that the intent of the testatrix was to give the real property to appellant only to the extent that the testatrix owned the same at the time of her death and thus inferred an ademption. But we regard the language "which I may own at the time of my death" in the context in which it is used as descriptive only and not conditional. The very next phrase, to-wit: "or a sum equal to the net proceeds of sale of any said interest occurring during the administration," strongly indicates the testatrix's intention that a sale of the property made by anyone other than herself was not to result in an ademption.

In addition, the reference in the will in the instant case to a sale occurring during administration makes the reasoning in *Mason* all the more applicable. After pointing out that the Legislature had not provided specific rules to cover the particular problem presented, the Supreme Court there said at page 223: ". . . it has set forth rules to govern the abatement

of testamentary gifts when the assets of the estate are insufficient to satisfy them in full. (Prob. Code, §§ 750-753.) We believe that those rules provide a better alternative than the rule of *pro tanto* ademption and that they therefore constitute an appropriate model for this court to adopt. (*Decorative Carpets, Inc.* v. *State Board of Equalization*, 58 Cal.2d 252, 256 [23 Cal.Rptr. 589, 373 P.2d 637]; see also Model Probate Code, § 231 (Simes 1946).) Thus, expenses of guardianship during an incompetency from which a testator does not recover are not substantially different from expenses and debts of a decedent's estate. Indeed, if guardianship expenses are not paid before the death of the incompetent, they become debts of his estate. *It should make no difference in the distribution of an estate that a guardian rather than an executor paid those expenses, for it is no more the function of a guardian than it is of an executor to modify the decedent's testamentary plan.* Accordingly, we adopt for the distribution of the estate in such a case the rules set forth in sections 750-753 of the Probate Code.'' (Italics added.)

■ Thus here, since the will does not provide that the Atherton property was to be appropriated for the payment of the estate's debts and expenses, the $25,000 remaining from the guardian's sale goes to appellant and the residuary beneficiaries must contribute to satisfy the balance of her specific legacy (Prob. Code, §§ 750, 751, 753).

The decree is reversed.

Shoemaker, P. J., and Agee, J. concurred.