JOHN W. JOHNSON *vs.* HOME FOR AGED MEN & others.

Middlesex.    March 17, 1890. — June 24, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Specific Devise — Trust Fund.*

A testator devised his residence in trust for his wife for life, the trustees at her death to convey it to the Home for Aged Men, and, disclaiming any intention to "impose any restriction upon the absolute title to be conveyed," suggested its use for a "home." After a specific bequest to his wife absolutely, and a gift to her for life of the income of a trust fund of twenty-five thousand dollars to be created out of personal property not specifically bequeathed, the testator stated that he preferred the provisions for his wife "to all other devises and bequests of this will," and directed the specific bequest to be paid to her, and the trust fund to "be formed before payment of any other legacies, and to be free from abatement" in case the estate should prove insufficient to carry out the will.    Another fund was then to be formed for the testator's sons, and preferred "next after" the devises and bequests already made.    At the wife's death, ten thousand dollars was to be paid out of the twenty-five thousand dollar fund to the Washingtonian Home, and the balance was to be held for the benefit of the sons and a granddaughter.    A power to sell real estate conferred upon the executor and the trustees expressly excepted the testator's residence.    The wife died before the testator ; and the personal estate after payment of debts was less than ten thousand dollars in value.    *Held*, that the testator's residence was not to be sold for the purpose of forming the fund of twenty-five thousand dollars ; but that the Washingtonian Home was entitled to all the personal estate.

BILL IN EQUITY, filed March 5, 1889, by the administrator with the will annexed of the estate of Joshua Seward, against

the Home for Aged Men, the Washingtonian Home, Joshua Seward and James W. Seward, sons of the testator, and Carrie E. Boutwell, his granddaughter, for instructions as to the disposition of the estate. The case was heard by *Field*, J., who reserved it for the consideration of the full court. The facts appear in the opinion.

. *E. L. Rand*, for the Home for Aged Men.

*H. G. Allen & W. R. Howland*, for the Washingtonian Home.

DEVENS, J.   The testator, after giving in the first article of his will his household furniture, pictures, etc., with one thousand dollars in money, to his wife absolutely, by the second article of his will devises to trustees for the benefit of his wife, for her life, his residence on McLean Street, in Boston, directing them to manage it for her benefit, and to pay over to her during her natural life the net income, or, if she so elected, to permit her to occupy the estate, she paying the taxes, etc. thereon, and keeping the same in repair. He further directs the trustees, " on the decease of my said wife, to convey the said parcel of real estate in fee to the Home for Aged Men, a corporation established by a law of this Commonwealth." He suggests to that corporation the expediency of using said premises for the " Home," stating the reasons why he deems it suitable therefor, but adding that by this suggestion he does *not intend to impose* any restriction " upon the absolute title to be conveyed to said Home for Aged Men in said real estate upon the decease of my said wife." By the same article, he bequeaths twenty-five thousand dollars in personal property, the income to be devoted to the benefit of his wife during her life, directing the trustees to form this fund by selecting any part of his whole personal property, not specifically bequeathed, as they may deem expedient, at an appraisement thereof, and, so far as they shall not select specific items of his personal property, directing the necessary amount to be paid by the executors to them in cash. He states that these provisions for his wife in this and the preceding article are intended to be in lieu of dower, or other claim on his estate, and adds, " I prefer said provisions to all other devises and bequests of this will, and direct that said bequests in article first to my said wife be delivered and paid to her, and said trust fund of twenty-five thousand dollars be formed, before

payment of any other legacies, and to be free from abatement in case by any misfortune my estate should prove insufficient for all requirements of this will." Upon the decease of his wife, the trustees are directed to dispose of this trust fund, by paying ten thousand dollars to the Washingtonian Home; "the balance of said trust fund, as it may then exist," is to be held and disposed of for the benefit of his sons and a granddaughter, in a manner which the will particularly defines.

By the third article of his will the testator bequeaths to his trustees sixteen thousand dollars, the income to be for the benefit of his two sons, according to certain trusts particularly stated. He adds, that he prefers this bequest next after the devise and bequests in the two preceding articles for the benefit of his wife, and directs the fund to be formed next after the twenty-five thousand dollar fund, and in the same manner, in whole or in part, by selection by the trustees from any of his property then remaining, and before payment of any legacies thereafter given by him. The subsequent clauses of the will give other legacies, some pecuniary and some specific, and provide for the management of the trust, for the payment of the taxes, and for the disposition of the residuum of the estate. They do not require to be considered in connection with the instructions asked, with the exception of the thirteenth clause, to which we will hereafter advert.

Mrs. Seward died before her husband. The debts of the testator have been satisfied, and the administrator has in his hands only the sum of $6,279.50, and he askes instructions as to whether it is his duty to sell, or apply to the proper court for leave to sell, the McLean Street estate, in order to form the twenty-five thousand dollar fund, and to pay therefrom, so far as he may, the legacies which were to be paid from that fund.

It is the contention of the Washingtonian Home, that the McLean Street estate should now be sold, and the proceeds thereof applied to the formation of the twenty-five thousand dollar fund, from which it is to be paid its legacy of ten thousand dollars in full before the children and other legatees, and also that, if the McLean Street estate is not to be thus sold, the Washingtonian Home is to be paid the sum now in the administrator's hands in part satisfaction of its legacy. So far as the children and granddaughter of the testator are concerned,

we understand that it is substantially conceded that the legacy to the Washingtonian Home is to be preferred above any which has been made for their benefit. No brief has been presented on their behalf, and the proposition is well sustained by an examination of articles second and third. The twenty-five thousand dollar fund is to be formed previous to the sixteen thousand dollar fund, which is to be formed " next after " out of personal property then remaining. While the testator declares, " I prefer this bequest next after the devise and bequests in the two preceding articles of this will for the benefit of my said wife," the fact that he has made a specific devise for the benefit of the Home for Aged Men, has ordered this fund to be formed only from what remains after forming the twenty-five thousand dollar fund, that he has fully disposed of that fund after the decease of his wife, and that in the disposition of it he has preferred, to the extent of ten thousand dollars, the Washingtonian Home to his children, with the further fact that in the subsequent provisions of his will, where authority is given to sell his real estate, he always excepts from such authority the McLean Street estate, show that by these words he has intended only to prefer this bequest after the devise and bequests of whatever character previously made, and that the only preference is to the legacies afterwards made. From the twenty-five thousand dollar fund the Washingtonian Home is to receive ten thousand dollars, and no more, while " the balance of the fund, as it may then exist," at the death of Mrs. Seward is to go to the sons and granddaughter. This provision would necessarily include the accumulations, if any had been made, while it would subject the subsidiary bequest to a diminution if there had been a loss in its investment, as it was a gift of a residuum. As the increase, if any, would have been enjoyed by the children, the deficiency, if such exists, must be borne by them.

The contention of the Washingtonian Home, which we have to consider, is whether the intention of the testator has been shown that the twenty-five thousand dollar fund created by the second article is to have such a preference over the devise of the McLean Street estate to the Home for Aged Men that this should now be sold in order to create it. The devise of that is of a piece of property clearly defined, and absolutely in terms is

to be conveyed on the death of his wife to the Home for Aged Men. As a rule, between specific and general devises, or legacies, the loss is to be wholly borne by the latter. Specific legacies are not to be abated on account of general legacies, unless the latter are made a charge thereon. Nor is the devise of a specified parcel of real estate to be charged with the formation of particular funds subsequently provided for in a will, unless the intent so to charge the property devised clearly appears. *Humes* v. *Wood*, 8 Pick. 478. *Towle* v. *Swasey*, 106 Mass. 100, 104. *Farnum* v. *Bascom*, 122 Mass. 282, 285. *Richardson* v. *Hall*, 124 Mass. 228, 233. The gifts of the two trust funds are not gifts of particular property, specified and distinguished from other property of the testator by any description, but are pecuniary legacies simply. *White* v. *Winchester*, 6 Pick. 48. *Towle* v. *Swasey*, 106 Mass. 100. *Johnson* v. *Goss*, 128 Mass. 433, 435.

It is urged on behalf of the Washingtonian Home, that the language above quoted from the second article shows that the provisions of that article as to the formation of the twenty-five thousand dollar fund were to take precedence of any devise therein made of a remainder in the McLean Street estate to the Home for Aged Men, and that the formation of the fund of twenty-five thousand dollars should have priority over any other provision of the will after the death of his wife. This argument concedes that, but for the two clauses in the second article, by which it is shown that the Washingtonian Home was preferred to his children, the third article would point to the sixteen thousand dollar fund as preferred above everything after the wife's death. All that the wife was to receive in the way of benefit from the McLean Street estate, according to the provision made for her by her husband, was for life, and she received this by her right to enjoy the rent thereof or the occupancy at her pleasure. When the testator says that the provisions made for his wife's support are to be preferred "to all other devises and bequests of this will," it cannot be intended to interfere with a devise of property in remainder, of which she would previously have enjoyed the income during life. The provisions for her support will have had the preference the testator accords to them over all other devises and bequests, when she has enjoyed, as by the terms of the will she is entitled to enjoy, the income

both of the real estate and of the twenty-five thousand dollar fund so far as the means to form it existed. Nor, when the testator directs the trust fund of twenty-five thousand dollars to be formed before payment of any other legacies, and to "be free from abatement in case by any misfortune my estate should prove insufficient for all requirements of this will," does he thereby prefer this fund to the specific devise he has made.

If we examine the whole will, — and the rule that the construction of a will is to be made on the whole instrument, and not on disjointed parts of it, and that all its various provisions are to be construed together, is very familiar, — it will be seen that the construction which the Washingtonian Home seeks to give to it is incorrect, that no preference is given to the twenty-five thousand dollar fund over the specific devise, and that the intention of the testator that the Home for Aged Men shall receive the fee of the real estate on the death of Mrs. Seward appears clearly. The fund bequeathed is in " personal property," and in its formation the trustees are authorized to select any part thereof on appraisement from the testator's whole personal property. There are but two references to this estate, except that quoted from the second article. These are in the thirteenth article. The testator, while directing the formation of the two funds from his personal property, seems to have apprehended that it might be insufficient for the purpose. In this article he authorizes his trustees to sell and convey any real estate, or any part of it, of which said trust funds may at any time consist, "except said McLean Street estate." He further empowers his executor in the settlement of his estate, or in the formation of any trust funds, or in the payment of legacies with the advice of the trustees, to sell his real estate, " saving always the McLean Street estate." These exceptions show that the testator intends to provide against any sale of this parcel of real estate, either for investment of the proceeds or to pay the legacies, and this for the reason that he has set it aside for the Home for Aged Men.

Upon the whole case, we are of opinion that the Washingtonian Home has failed to show that there was any intention on the part of the testator to prefer the trust fund in which it is interested over the specific devise made for the Home for Aged Men, or to give any priority thereto, and that the intention not

to do so fairly appears from the various portions of the will when construed together.   The Washingtonian Home is, therefore, not entitled to have this estate sold and the proceeds applied to the formation of the twenty-five thousand dollar fund.   It is, however, entitled to the sum of $6,279.59 now in the hands of the administrator.                                *Instructions accordingly.*