WILMERTON v. WILMERTON et al.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

No. 1,609.

WILLS (§ 764*)—LEGACIES—ADEMPTION.

Testator bequeathed to plaintiff and another notes and moneys to the amount of $75,000 as per contract, to be managed by a specified bank for the benefit of testator's estate, and the remainder of the estate, after payment of specific bequests, was given to a residuary legatee. The contract referred to created a trust by which the bank agreed to collect and receive the principal and interest of the notes and securities, paying the income to testator on demand, reinvest the principal, and on testator's death to account for all the property to his estate. Testator having become incompetent, a conservator was appointed, who demanded and received from the bank the income that had accumulated in its hands, which on testator's death was claimed by the executor as a part of the residuary estate. *Held* that, since a legacy will be held to have been adeemed only where such was testator's apparent intention, the collection of such income by the conservator did not constitute such a withdrawal of the amount collected from the fund as to constitute an ademption of the bequest thereof to that extent, in the absence of any other evidence that such was testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1978–1994; Dec. Dig. § 764.*]

Appeal from the Circuit Court of the United States for the Northern Division of the Southern District of Illinois.

Bill by Frank Wilmerton against William W. Wilmerton and another. Decree dismissing the bill, and complainant appeals. Reversed, with instructions.

The bill was by appellant, a citizen of Iowa, against appellees, citizens of Illinois, the appellee, William W. Wilmerton, being made defendant both in his own right and as executor of the will of William Wilmerton. deceased; and was to recover complainant's one-half share in $12,442.03, together with interest thereon, said to be due to appellant under the will of William Wilmerton, deceased, and wrongfully withheld by appellee, William W. Wilmerton, as executor of such will. A demurrer to the bill having been sustained, the bill was dismissed for want of equity.

The salient facts, stated in the bill, are as follows: On January 12, 1904, William Wilmerton, deceased, executed his will, wherein there was bequeathed to the appellee, Louisa Little, and to appellant, Frank Wilmerton, daughter and son respectively of the testator, "notes and moneys to the amount of $75,000, as per contract to be managed by said bank [The Central Trust and Savings Bank of Rock Island] for the benefit of my estate." The remainder of the estate, after three other specific bequests, went to William .W. Wilmerton, appellee, amounting, after the deduction of the other bequests, to considerably more than $75,000 in value. The trust, recited in the contract with the bank, was as follows:

"The said party of the first part [the bank], shall collect and receive the interest and principal of the said notes and securities at maturity, pay the income thereof to said party of the second part William Wilmerton, on de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mand, and reinvest the principal thereof as speedily as it is able to, after the receipt of the same, and upon the death of the said party of the second part, to account for all said property to the estate of the said party of the second part. The said party of the first part, in and about the said collecting of interest, principal, and re-investment, to be held to the exercise of the same degree of care as it would of its own property. * * * "

At the date this contract was entered into, William Wilmerton was about eighty years of age, and at the date the will was executed was a little past eighty-one years of age; but on both dates was of sound and disposing mind and memory. Subsequently Wilmerton became insane, and on the twelfth day of June, 1906, one Thomas J. Medill was duly appointed conservator of his estate, and forthwith took possession and control of the estate, except so much thereof as was, at the time, in the care, custody and control of the trustee above mentioned. Wilmerton, up to the time of his death, November 26th, 1907, did not recover his reason.

The bill shows that during the entire period of the conservation, Wilmerton's estate was worth something like $200,000; no need is shown for the taking of any portion of the $75,000, embodied in the trust agreement, either for the conservation of the estate or the support of the ward; nor any occasion for the change of securities. Notwithstanding this, the conservator, considering himself entitled to act upon that provision of the trust agreement under which, "on demand," it was provided that the trustee should pay the income to Wilmerton (and apart from any need arising from the conservation of the estate or the maintenance of the ward), on the third day of October, 1906, demanded of the trustee that it should pay over to him the accrued interest or income that had accumulated in its hands; and thereupon there was paid to him such accumulation to the amount of $12,442.03; which sum, appellee William W. Wilmerton, as executor, has treated as a part, not of the specific trust, but as a part of the residuary estate—refusing to pay over the same to appellant Frank Wilmerton and appellee Louisa W. Little, as a part of the specific trust fund bequeathed to them. The further facts are stated in the opinion.

S. S. Gregory, for appellant.
H. A. Weld, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above), delivered the opinion:

The argument of appellee William W. Wilmerton is, that under the law of Illinois, the conservator succeeded to the right of the beneficiary in the trust agreement "to demand" the income accumulating and that had accumulated upon the securities embodied in the trust; that such demand having been complied with, the income thus paid over became at once segregated from the trust fund—was no longer a part of the trust fund in fact, but became a part of the general property of the conservator's ward; from which it follows, that the will, acting as of the testator's death, a date subsequent to this act of segregation, acted only, so far as the bequest to appellant and Louisa W. Little went, upon the securities remaining; the test of the testator's intention being, not what, aside from the will, he may be shown to have said or done in relation to the specific bequest involved, but what property was, in fact, included in and acted upon by the specific bequest at the date of his death.

We accept this as the true test of the testator's intention. It does not follow, however, that intention is thereby shown in the will that the power of the testator to take down "on demand" the income of the

securities mentioned in the specific bequest, should go over to his conservator in case of his subsequent mental incapacity. No such intention is affirmatively shown in the will. Nor does it follow that such power of the testator to take down the income goes by operation of law to the conservator, to the end that the special fund, acted upon in the specific bequest, shall be by that amount diminished. That, indeed, is the real question in this case.

Counsel for appellee have brought to our attention two cases, one an English, the other a Pennsylvania case, the former, at least, supporting his contention, viz: In Re Freer, 22 L. R. Chancery Division, 622, and Hoke v. Herman, 21 Pa. 301. The Freer Case was that of a testator who bequeathed "all his first preference bonds" in a certain railroad to one of his sons, the residuary estate to a son and daughter. Subsequently, but before the testator's death, and while he was of unsound mind, a conservator, under an order of the Lord Justices, transferred these bonds, on the ground that they were an unsafe investment, into consols, and this was held by Chitty, Justice, to have been an ."ademption" or "extinguishment" of the legacy—the learned Justice finding that he need make no distinction between those two terms in their application to the question before him.

In the Pennsylvania case, Herman held a note against Hoke, which was the subject of a bequest to Hoke by Herman, in his will made subsequently, as follows:

"I give and bequeath unto my said nephew Herman Hoke, and his heirs, a promissory note of $600, with interest, which I hold against him at this time."

Subsequently Herman became insane, a committee of his person and estate was appointed, and this committee, settling with Hoke for certain services rendered by him to Herman after the date of the will (the bequest, above mentioned, being known neither to Hoke nor to the committee), credited $178.63 on the interest on the note, and a receipt was given by Hoke to the committee in full of his claim. Upon the death of Herman, the note, thus in part paid and endorsed, was delivered to Hoke; but Hoke demanded the return of the $178.63, with interest, debited against him in his settlement with the committee, there being assets of the estate sufficient to pay the demand if he were entitled to recover. The Court, Black, C. J., delivering the opinion, held:

"That if a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. If such a legacy be of a debt, payment necessarily makes an end of it. The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator."

In the English case, the ruling is made to turn upon the proposition that if the testator himself, not being a lunatic, had sold the stock and placed the proceeds to a separate account on his books, there would have been an ademption or extinguishment of the specific legacy, notwithstanding a memorandum placed there by the testator to the effect

that for all purposes the proceeds were to stand in place of the stock—a proposition that is as true here as in England, for the stock having been voluntarily taken down by the testator from the specific bequest. and the memorandum not having been attested according to the Wills Act, there stood at the date of the testator's death (the date when the will took effect), no disposition by special bequest of the stock thus involved. But is that proposition a true criterion of the question before the Court in the Freer Case, or the question before us now? Had the testator in the Freer Case sold the specific preference bonds, so that they no longer, in specie, were a part of his property, or had the testator in this case taken down the interest, or any portion of the principal (provided he had power, under the trust agreement, to take down the principal), the act would have been one performed by him in view of his then existing will, and, therefore, a voluntary and. conscious extinguishment or diminution of the corpus of the specific thing upon which the specific bequest was intended to act. In other words, the will and the subsequent act, considered together, would give us the testator's final testamentary intention.

But how can that be said to be the case where the diminution or extinguishment of the thing, upon which the specific bequest acts, is not the subsequent voluntary or conscious act of the testator himself. The conservation of an estate under the lunacy laws, both here and in England, is purely an administrative function. Is it contemplated that an administrator may, at his will, change the testator's will? The testator, lunacy coming on, is, so far at least as a disposing mind is concerned, civilly dead. Does the disposing mind, along with the ward's effects, go over to the conservator? Is the conservator anything more than a mere custodian and administrator of the ward's estate, with no power, either directly or by indirection, to change the ward's duly expressed purposes respecting the disposition of that estate until the ward recovers his reason, or the administration after death begins?

The Pennsylvania case is expressly founded on Blackstone v. Blackstone, 3 Watts, 338, 27 Am. Dec. 359, an early Pennsylvania decision, holding that where a specific bequest of bank stock, after the date of the will, was exchanged for a bond, the bequest was adeemed, notwithstanding the declared intention of the testator to keep the bond for the legatee in lieu of the stock—a ruling that again is founded upon the fact that the so-called "declared intention" was not attested according to the laws of Pennsylvania relating to wills; and the change having been made voluntarily and consciously by the testator in view of his will, must, in the absence of any duly attested further intention, be held to have been an intentional and conscious change in his testamentary disposition. Nor is Hoke v. Herman exactly in point; for the voluntary payment of interest on a note by the intended legatee, even though the testator was not in a mental condition to determine whether he would accept or reject it, is not the case of a stranger to the bequest changing, at his own will, the carrying out of the bequest.

In the Am. & Eng. Encyclopædia of Law (2d Ed.), Vol. 1, p. 625, it is said:

"There is some early English authority for the view that the question whether or not a legacy has been adeemed does not depend upon the supposed intention of the testator, but is to be determined solely according to the strict rule requiring the property bequeathed to remain in specie and a part of the testator's estate. There are, however, English cases to the contrary." Citing Jenkins v. Jones, L. R. 2 Eq. 323.

"In the United States the doctrine of the latter line of cases has been generally followed; and in deciding questions of ademption the courts here have been disposed to observe the same rule which prevails elsewhere in the construction of wills and testaments, and to hold legacies adeemed only where the testator apparently so intended."

Though none of the cases cited precisely support this statement of the rule, there are no cases, other than the ones above mentioned, that are contrary thereto. Upon sound reason, we think that the English and Pennsylvania cases cited ought not to be followed, and upon what appears to us to be sound reason, we think that the rule, that legacies are adeemed only where such an intention appears on the part of the testator himself, ought to be followed. The question, in our judgment, is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered.

The decree of the Circuit Court is Reversed, with instructions to overrule the demurrer to the bill and to proceed further in accordance with this opinion.