Walsh *v*. Gillespie.

DOROTHY AUSTIN WALSH *vs*. CORA GILLESPIE, executrix, &
others.

Middlesex.   October 10, 1958. — January 8, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Devise and Legacy*, Specific legacy, Ademption.

Sale by a conservator, soon after his appointment and shortly before the
death of his ward, of one half of shares of stock specifically bequeathed
in the ward's will did not operate as an ademption of the specific
bequest as to an unexpended and traceable balance of the proceeds
of the sale remaining in the conservator's hands at the ward's death
where it appeared that when the conservator took charge the ward's
estate was small with little available cash and that the stock was the
only asset readily convertible into cash and was the largest asset of the
estate.

PETITION IN EQUITY, filed in the Probate Court for the
county of Middlesex on June 11, 1957.

The case was heard and reported without decision by
*McMenimen, J.*

*Jules E. Angoff & Walter J. Hurley*, for the petitioner.

*Levin H. Campbell, (Patricia A. Wilbert* with him,) for the
respondents Thomas and others.

SPALDING, J.   On May 24, 1950, Florence I. Treet, late
of Medford (hereinafter called the testatrix), made a will
in which she gave to Cora Gillespie and Dorothy Austin
Walsh "all Du Pont Stock that I may have at the time of
my death, in equal shares, share and share alike."   On Au-
gust 15, 1955, because of the advanced age and mental
weakness of the testatrix, J. Howard Macaulay was ap-
pointed temporary conservator of her property by the Pro-
bate Court for Middlesex County.   On October 10, 1955,
Mr. Macaulay was appointed permanent conservator.   At
the time of these appointments and for some time prior
thereto the testatrix owned one hundred shares of common
stock of E. I. du Pont de Nemours & Company, Inc.

On November 18, 1955, the conservator sold fifty shares of the du Pont stock for the net sum of $12,089.93. Immediately prior to the sale the assets of the testatrix consisted of her home worth about $12,500, one hundred shares of du Pont stock, household furnishings worth approximately $900 and bank accounts totaling slightly less than $800.

The testatrix died on December 30, 1955. At that time the sum of $10,344.90 from the proceeds of the sale of du Pont stock remained unexpended, the sum of approximately $1,700 therefrom having been used by the conservator for the maintenance and support of the testatrix.

This petition is brought by Dorothy Austin Walsh (one of the two legatees of the du Pont stock) to have her rights in the unexpended proceeds of the sale of fifty shares determined. The case was submitted on a statement of agreed facts and reported to this court without decision. G. L. c. 215, § 13.

The question for decision is whether the sale of the du Pont stock by the conservator worked an ademption, to the extent of fifty shares, of the specific bequest of that stock to the petitioner and Cora Gillespie. The petitioner does not contend that she is entitled to any portion of the proceeds from the sale that was expended by the conservator on behalf of the testatrix. She asserts a right only to one half of the unexpended proceeds of the sale.

The parties agree — and rightly — that the bequest of the du Pont stock is specific. *Tomlinson* v. *Bury*, 145 Mass. 346. *Moffatt* v. *Heon*, 242 Mass. 201, 203. The distinctive characteristic of such a legacy is its liability to ademption or extinction, for it can only be satisfied by the thing bequeathed. Thus a specific legatee takes nothing where the property has ceased to exist or had been disposed of by the testator during his lifetime. *Moffatt* v. *Heon*, 242 Mass. 201, 203.

In situations not involving a fortuitous destruction of the property, under the early common law (following the Roman law), ademption was considered as a species of revocation and could take place only if the testator so intended; there

must be an animus adimendi.   45 Harv. L. Rev. 710.
Warren, The History of Ademption, 25 Iowa L. Rev. 290,
296–300.   Page on Wills (3d ed.) § 1526.   But since Lord
Thurlow's decision in 1786 in *Ashburner* v. *Macguire,* 2 Bro.
Ch. C. 108, intent has ceased to be of importance either in
England or in this country.   Warren, *supra,* pp. 304–319.   In
general it may be said that "What courts look to now is the
fact of change.   That ascertained, they do not trouble them-
selves about the reason for the change."   Per Cardozo, J., in
*Matter of Brann,* 219 N. Y. 263, 268.   This has been called the
"identity" theory in contradistinction to the "intent"
theory.

   In this Commonwealth, although there is an intimation in
an early case (*White* v. *Winchester,* 6 Pick. 48, 56) that in-
tention to adeem may be of importance, the law has since
been settled otherwise.   In *Richards* v. *Humphreys,* 15 Pick.
133, it was said by Chief Justice Shaw at page 135, "A
specific legacy of a chattel, or a particular debt, or parcel of
stock, is held to be adeemed, when the testator has col-
lected the debt, or disposed of the chattel or stock, in his
lifetime, *whatever may have been the intent or motive of the
testator in so doing"* (emphasis supplied).   This statement
was quoted with approval in *Moffatt* v. *Heon,* 242 Mass. 201,
204.   There can be no doubt, therefore, that in common with
the great weight of modern authority this court is com-
mitted to the "identity" theory and ordinarily looks only
to the existence or nonexistence of the subject matter of the
specific legacy.

   But there is one situation where some courts have refused
to apply the "identity" doctrine.   Thus where a testator,
as in the present case, has become incompetent and his
affairs are being conducted by a conservator or guardian
the majority view in this country is that the sale of the prop-
erty by the conservator or guardian does not work an ademp-
tion of a specific legacy, at least so far as the proceeds are
traceable.   *Wilmerton* v. *Wilmerton,* 176 Fed. 896 (7th Cir.),
cert. den. 217 U. S. 606.   *Lewis* v. *Hill,* 387 Ill. 542.   *Buder*
v. *Stocke,* 343 Mo. 506.   *Morse* v. *Converse,* 80 N. H. 24.

*Duncan* v. *Bigelow,* 96 N. H. 216. *In re Cooper,* 95 N. J. Eq. 210. See *Roderick* v. *Fisher,* 97 Ohio App. 95. None of these cases takes the position that this principle applies to that portion of the proceeds which have been expended for the support of the ward. It seems to be generally recognized that as to such expenditures the specific legacy is adeemed pro tanto.

In England and in a few jurisdictions in this country, the courts have applied the "identity" rule and have held that where the subject of a specific legacy has been sold by a conservator, guardian or committee of an incompetent ward the legacy was adeemed, notwithstanding the fact that the proceeds of the sale were earmarked. *Jones* v. *Green,* L. R. 5 Eq. 555. *In re Freer,* 22 Ch. D. 622. *Matter of Ireland,* 257 N. Y. 155. *Hoke* v. *Herman,* 21 Pa. 301. *In re Barrows' Estate,* 103 Vt. 501. See generally on this subject Page on Wills (3d ed.) § 1530, and notes in 51 A. L. R. 2d 770, and 61 A. L. R. 2d 449, 468. See also note in 45 Harv. L. Rev. 710.[1]

The divergence of views on this question has not been confined to courts. Distinguished scholars have likewise differed. Thus Professor Page favors the majority view, while Professor Warren prefers the minority view. See Page on Wills (3d ed.) § 1530; Warren, The History of Ademption, 25 Iowa L. Rev. 290, 323, 325.

In this Commonwealth the question at hand has never been passed on and we are free to choose between the two views. There can be no doubt that, from the standpoint of logic and symmetry, there is much to be said for the minority view. It is easy to apply and avoids the elusive and troublesome questions of intent. But the results of the minority view are harsh and some of the courts that have applied it have said as much. Thus in *In re Freer,* 22 Ch. D. 622, Mr. Justice Chitty at the conclusion of his judgment said, "I regret the result, but I consider the case to be

[1] In Scotland, while intention is regarded as immaterial, a sale of bequeathed property by an insane testator's committee will adeem only if the sale is proper and would have been unavoidable had the testator remained competent. *Macfarlane* v. *Macfarlane,* [1910] Sc. Sess. Cas. 325.

plain" (p. 628). It is apparent that the results of the English rule have not proved satisfactory, for it has now been abrogated by statute. 53 & 54 Vict. c. 5, § 123 (1). 12 & 13 George V, c. 60, § 2. See *In re Walker*, [1921] 2 Ch. 63. Compare *In re Palmer*, [1945] Ch. 8. Ontario has a similar statute. Revised Statutes of Ontario (1950) c. 230, § 18.

In *Matter of Ireland*, 257 N. Y. 155, which is probably the leading American case favoring the minority view, the court did not rest its decision entirely on a remorseless application of the "identity" rule but went on to assess the probable intent of the testator and pointed out that the residuary legatees were the testator's children whereas the specific legatee was a stranger. It is significant that the rule of the *Ireland* case has been modified by statute in so far as real estate is concerned. Civil practice act of N. Y. art. 82, § 1399. We have a somewhat similar statute in this Commonwealth which likewise applies only to real estate.[1]

In Pennsylvania where, since the decision in *Hoke* v. *Herman*, 21 Pa. 301, the minority rule has obtained, that decision was recently followed with reluctance by an intermediate court, the court preferring the majority rule. *Graf Estate*, 34 Del. Co. R. (Pa.) 20, 24–25.

The case of *In re Barrows' Estate*, 103 Vt. 501, is usually cited as favoring the minority view, and certainly the language of that case points strongly in that direction. But all that the case actually decides is that there was an ademption of that portion of the specific legacy used by the guardian for the ward's support — a result which would have been reached under the majority view.

We are of opinion that an application of the "identity" theory to a case like the present would be unjust. It would result in a disruption of the dispositive scheme of the

---

[1] General Laws c. 204, § 9, provides in part, "In every sale of the real estate of a . . . ward by [a] . . . conservator, the surplus of the proceeds remaining on the final settlement of the accounts shall be considered as real estate, and shall be disposed of to the same persons and in the same proportions to whom and in which the real estate if not sold would have descended or have been disposed of by law."

testatrix because of wholly fortuitous circumstances beyond her control. Of course this is also the case when a testator's property is destroyed by an act of God or by other causes. Yet there is this difference: in the latter situation the testator, still being competent, has an opportunity to correct the result by changing his will. He has no such opportunity while he remains incompetent. But there are other reasons. The estate here was comparatively small. When the conservator took charge there was only a small amount of cash available. The only asset which could be readily converted into cash for the ward's support was the du Pont stock. But this was the largest asset of the estate and it had been specifically bequeathed to the petitioner and another; they were the principal objects of the testatrix's bounty. If there is an ademption then nearly one half of the estate's largest asset will fall into the residue to be divided among five residuary legatees who, so far as appears, were not intended to receive more favorable treatment under the will than the specific legatees. There is here no problem in tracing the proceeds of the sale, for they have been earmarked.

In a situation quite similar to the case at hand the Circuit Court of Appeals for the 7th Circuit in *Wilmerton* v. *Wilmerton,* 176 Fed. 896 (the leading case representing the majority view), held that the act of the conservator in collecting part of a fund which was specifically bequeathed did not work an ademption of the legacy. In the course of its well reasoned opinion the court said, "The question, in our judgment, is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his

own wishes, exempt from the interference, caprice or interest of others, be fully carried out. In that way only can his intention, as embodied in his will, be truly administered" (p. 900). With these views we are in agreement.

We hold, therefore, that the sale of the fifty shares of du Pont stock by the conservator did not operate as an ademption as to the unexpended balance remaining in his hands at the death of the testatrix.

A decree is to be entered in conformity with this opinion. Costs and expenses of the proceedings in this court are to be in the discretion of the Probate Court.

*So ordered.*