156

### In re WIGHT'S ESTATE.
### No. 14862.

County Judge's Court, Palm Beach County.

December 15, 1959.

Phillip D. Anderson, West Palm Beach, for petitioner.

M. L. Esarey, West Palm Beach, for the executors.

RICHARD P. ROBBINS, County Judge.

This cause came on before me upon the petition of Mary C. McGovern for a determination of her interest in the estate of Lucy Trowbridge Wight, deceased, and the answer thereto filed by the executors.

The decedent executed a valid last will and testament on October 15th, 1954, providing among other things, as follows—

"III. I give, devise and bequeath the following specific items of my personal estate and property to the following persons:

1. Any automobile I may own at the time of my death, I give, devise and bequeath unto Mary C. McGovern, now living at 72 East 86th St., New York City, 28, New York. * * * * ."

On the 16th day of November, 1955, Lucy T. Wight was adjudicated to be mentally incompetent due to coma as the result of an automobile accident and on said date a guardian was appointed of her person and property.

At the time of the adjudication of incompetency the incompetent owned a Ford automobile, two-door sedan, model 1955, which the guardian sold for the sum of $1,300. On December 21, 1955, the guardian petitioned the court for a confirmation of this sale, stat-

ing in the petition that the ward was involved in an automobile accident by reason of which, in the opinion of her doctors, she would not be able to use the same for a considerable length of time and that meanwhile it was deteriorating from time and disuse and that funds to be derived from the sale were badly needed to provide care for the incompetent. This sale was confirmed by order of the court on said date.

Lucy Trowbridge Wight died without having regained competency or being restored to her civil rights, and her last will and testament was duly admitted to probate June 5th, 1958.

The question as to whether or not the sale, by a guardian of an incompetent testator, of property forming the subject matter of a specific bequest contained in a will made while the testator was of sound mind works an ademption seems not to have been decided by our Florida supreme or appellate courts at this time.

The decisions in this country are divided on the question, some courts applying the strict rule that an ademption results when personal property specifically bequeathed is no longer available even though it has been sold or brought to an end by the guardian, others the view that ademption of a specific legacy depends upon the intention of the testator and that if the thing specifically bequeathed remains in specie at the time of the adjudication of incompetency, when the testator became civilly dead, no ademption occurs.

In a digest of Roman law found in volume 7 of the Latin Classics at page 385, we find rule 29 of chapter 24 of "The Rules of Ulpian" which provides as follows—

"29. A legacy when given can be adeemed either by the same testament, or by codicils confirmed by the testament, provided, however, that the mode of its ademption be the same as of its bequest."

In the Roman law, therefore, no ademption could take place unless the testator so intended.

There seems to be some confusion as to the holding of English courts on this subject prior to Lord Thurlow's decision in Ashburner v. Macquire, 2 Bro. Ch. C. 108, in 1786. The early English cases borrowing from the civil law (Justinian, Inst. lib. 11, tit. 1, sec. 12) construed ademption as a species of revocation, which could take place only if the testator intended to revoke the gift by his disposition of the property. See Ademption Resulting from Acts of the Guardian of an Insane Testator. 45 Harvard Law Review 710. And in the same article it is stated that Lord Thurlow was the first to break away from the theory of intent.

From this it seems clear that prior to Ashburner v. Macquire (1786) the English Courts followed the Roman law and ademption could take place only if the testator so intended.

This theory, as well as decisions of the courts of this country on the question, is thoroughly discussed in Walsh v. Gillespie (Mass.), 154 N.E. 2d 906.

Having determined what the common law of England was as of July 4th, 1776, it becomes unnecessary to decide which of the rules aforesaid is the majority rule in the United States—because Florida has by statute adopted the common and statute laws of England which were of a general nature on that date. Section 2.01, Florida Statutes.

It is interesting to note, too, that the English case law which came into existence after Lord Thurlow's decision to the effect that conversion of the subject of a specific legacy by court order adeems the legacy is no longer in force in England since the Lunacy Act of 1890, 53 and 54 Vic. C. 5. Sec. 123, provides that a lunatic's legatee has the same interest in the proceeds of the disposition under court order of a lunatic's property as he would have had in the property itself had no change been made.

It is evident that the purpose of this act of Parliament was to restore the case law of England as it was before Ashburner v. Macquire was decided. The substance of this case law aforesaid, has been summed up by the Model Probate Code Committee of the American Bar Association in cooperation with the research staff of the University of Michigan Law School in section 231 of its "Model Code in Guardianship", as follows—

> "Sale of Ward's Property not an Ademption. In case of the guardian's sale or other transfer of any real or personal property specifically devised by the ward, who was competent at the time when he made the will but was incompetent at the time of the sale or transfer and never regained competency, so that the devised property is not contained in the estate at the time of the ward's death, the devisee may at his option take the value of the property at the time of the ward's death with the incidents of a general devise, or the proceeds thereof with the incidents of a specific devise."

As a comment under this section the committee cites "Cf. 53 and 54 Vict., C. 5, Sec. 123 (1)."

I am of the opinion that this was the common law of England at the time of its adoption by statute in Florida and is now the rule in this state.

The interest of the legatee in the estate is, therefore, adjudicated in accordance with this rule.