Donovan, J.
Plaintiff Francis Craft (“Craft”) brings this action which consolidates a number of divergent claims that Craft has against William E. Kelly, Jr.’s estate. For the purposes of this motion, the relevant count is Count V which seeks a declaratoiy judgment stating that certain property specifically bequeathed to Craft was not adeemed and that the defendant holds certain funds in a constructive trust for the benefit of the plaintiff. The action is currently before the court on the plaintiffs motion for summary judgment on Count V. For the reasons outlined below, the plaintiffs motion is ALLOWED.
BACKGROUND
The undisputed material facts are as follows:[1]
On January 18, 1993, the decedent, William E. Kelly, Jr. (“Kelly”) was smoking in bed at his residence located at 143 Bourne Avenue in Somerset. A fire ensued and, as a result, the dwelling was partially burned and Kelly was severely injured. Kelly suffered third-degree bums over 95 percent of his body and was taken by ambulance to Charlton Hospital. Kelly was subsequently airlifted to the bum unit at Massachusetts General Hospital. At some point, Kelly lost consciousness. On January 24, 1993, without having regained consciousness, Kelly died. From the time he was taken from the fire to the time of his death, Kelly was unable to communicate with his doctors or anyone else.
Kelly’s will contained the following specific bequest:
I give, devise and bequeath my real estate at 143 Bourne Avenue, Somerset, Massachusetts to FRANCES CRAFT, providing she survives me by thirty (30) days.
Kelly’s will further provided that Jeanne P. Louizos would take the remainder of his estate. Irving B. Kane was named as the executor of the will.
Prior to his death, Kelly had insured the property in question and, in accordance with this policy, his insurance carrier paid a sum of $48,732.38 to Kelly’s estate.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 15, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts of if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
Craft has moved for summary judgment on Count V of her complaint seeking a declaratory judgment that the specific bequest of real estate contained in Kelly’s will was not adeemed by virtue of the fire which damaged the property and caused Kelly’s fatal injuries. To the extent that the defendant requests a declaration that the gift was so adeemed, the court treats this as a cross-motion for summary judgment.
In its simplest form, the doctrine of ademption states that, when a specific legacy has ceased to exist or has been disposed of during the lifetime of the testator, the legacy is adeemed and the legatee takes nothing. Walsh v. Gillespie, 338 Mass. 278, 279 (1959). See also, 80 Am.Jur.2d Wills, §1705. In the present case, there is no question but that the real property is a specific legacy subject to ademption.
Under early common law, the courts looked to the intent of the testator to determine if a specific legacy had been adeemed. Walsh, supra, at 279-80. However:
since Lord Thurlow’s decision in 1786 . . . intent has ceased to be of importance either in England or in this country ... In general, it may be said that “What courts look to now is the fact of change. That *396 ascertained, they do not trouble themselves about the reason for the change.”
Id. at 280.
Courts have since split on the question of intent and ademption. Indeed, courts adhering to the “identity theory” and courts following the “intent theory” both claim to be in the majority in their opposing viewpoints. See, e.g., Walsh, supra, at 280 (stating that a majority of courts adhere to the identity theory); Baybank Harvard Trust Co. v. Grant, 23 Mass.App.Ct. 653, 655 (1987) (stating similar contention); In Re Estate of Larsell, 495 P.2d 57, 60 (Or.App. 1972) (stating that “great majority” of American courts follow identity theory); In Re Estate of Bierstedt, 119 N.W.2d 234, 238 (Iowa 1972) (stating that intent theory is majority rule); In Re Estate of Wolfe, 208 N.W.2d 923, 924 (Iowa 1973) (“The minority view adheres to a rigid ‘identity’ theory...”).
In the end, however, the question of which view represents a majority view is no more than an academic curiosity since it is clear that the Commonwealth follows the identity theory[2] in ademption cases.[3] As the court recently held in Wasserman v. Cohen, 414 Mass. 172, 173-74 (1993):
We have long adhered to the rule that, when a testator disposes, during his lifetime, of the subject of a specific legacy or devise in his will, that legacy or devise is held to be adeemed, “whatever may have been the intent or motive of the testator in doing so.” . . . The focus is on the actual existence or nonexistence of the bequeathed property, and not on the intent of the testator with respect to it.
Id. (citations omitted).
The question then becomes whether the property in question was adeemed under the identity theory of ademption. Within those states which follow the identity theory, however, there is yet another split of authority. Some courts hold that a specific legacy is adeemed only if the bequeathed property was voluntarily disposed of during the testator’s lifetime while other courts have held that any disposition — intentional or accidental — serves to adeem the gift. See, John B. Ludington, Annotation, Disposition of Insurance Proceeds of Personal Property Specifically Bequeathed or Devised, 82 ALR.3d 1261, 1262 (1978). While some of the Massachusetts cases imply that a voluntary disposition was required for a bequest to be adeemed,[4] the more persuasive interpretation under Walsh v. Gillespie, 388 Mass. 278, 282-83 (1959), is that a gift is adeemed by any disposition of the devised property.
Even so, the Walsh court went on to recognize one exception to the general rule of ademption. In Walsh, the decedent made a specific devise of certain shares of stock. Prior to her death, however, the decedent’s affairs were placed in the care of an administrator due to the “advanced age and mental weakness of the testatrix.” Id. at 278. Aso prior to the testatrix’s death, the conservator sold approximately half of the devised stock. A portion of the proceeds from the sale of the stock were used for the care of the testatrix. At the time of the testatrix’s death, approximately half of the stock remained as well as some of the proceeds from the sale of the other half of the stock. The court then proceeded to discuss whether the sale of the stock by the conservator should serve to adeem the devise of the stock.
As is discussed in greater detail above, the Walsh court began by reaffirming its support for the identity doctrine. Id. at 280-81. The court, however, went on to hold that:
an application of the “identity” theory to a case like the present would be unjust. It would result in a disruption of the dispositive scheme of the testatrix because of wholly fortuitous circumstances beyond her control. Of course this is also the case when a testator’s property is destroyed by an act of God or by other causes. Yet there is a difference: in the later situation the testator, still being competent, has an opportunity to correct the result by changing his will.
Id. at 282-83 (emphasis added).
The court continued by quoting from the “well reasoned opinion” of Wilmerton v. Wilmerton, 176 F. 896, 900 (7th Cir. 1910):
“The question in our judgment, is not whether, as a mere matter of accident, or of purpose outside of the testator’s purpose, the thing set apart as the corpus of a special bequest has been changed in specie. The real question is whether, all things considered, the testator’s testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way and that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice or interest of others be fully carried out . . .” With these views we are in agreement.
Walsh, supra, at 283-84. Massachusetts courts have subsequently reaffirmed their support for this exception. Wasserman, supra, at 174, n.3; Bostwick, supra, at 295-96; BayBank Harvard Trust Co., supra at 655.[5]
Massachusetts courts have not yet discussed whether, under facts such as are presented here, this exception would apply. Given the language and rationale of Walsh, however, this court concludes that it must.[6] In the present case, Kelly was, for all intents and purposes, incompetent from the moment he was injured in the fire to the time of his death. Kelly was unable to communicate with his doctors, or anyone else, from the time he was brought to Massachusetts General Hospital to the time he died. Clearly, then, at the last moment that Kelly was able to exercise a testamentary disposition, the house was still in existence.
*397 Had Kelly recovered from his injuries and — intentionally or accidentally — failed to update his will to account for the destruction of the house, a different result would be warranted. Such was not the case here. In the present case, Kelly had no opportunity to “correct the result by changing the will.” Walsh, supra, at 283. Accordingly, Kelly’s specific bequest of the property to Craft was not adeemed. To hold otherwise would be, as the Walsh court noted, unjust.[7]
The final issue to be discussed is the exact amount to which the plaintiff is entitled. The plaintiff has claimed that she is entitled to the full $48,732.38 paid to the estate by the decedent’s insurance carrier. The defendant, however, argues that even if the plaintiff is entitled to the proceeds of the insurance policy, she is only entitled to said proceeds subject to the decedent’s debts, funeral expenses, taxes and the costs and expenses of administering the estate. While this is partially correct, it is not entirely so. The $48,732.38 is, under the circumstances surrounding this case, part of a specific bequest. As such, while it is subject to the expenses listed above, it may only be used to satisfy such expenses once the rest of the general bequests and legacies in the estate are exhausted. Johnson v. Home For Aged Men, 152 Mass. 89 (1890).
ORDER
For the reasons outlined above, the plaintiffs motion for summary judgment on Count V of the complaint is ALLOWED. To the extent that the general legacies, bequests, and residuary are insufficient to pay the expenses detailed above, such expenses shall be paid from the proceeds of the insurance policy.[8] To the extent that the proceeds of the insurance policy are not required to pay such expenses, the defendant holds said proceeds in a constructive trust for the benefit of the plaintiff. If the expenses detailed above can be satisfied in their entirety from the general bequests and residuary, the defendant will hold the entire proceeds of the insurance policy in a constructive trust for the benefit of the plaintiff.

 The defendant has opposed this motion on a legal, rather than factual basis. It appears that, for this reason, 'the defendant has not disputed any of the facts as presented by the plaintiff. Although the defendants have failed to request as much, the court will treat the following facts as undisputed for the purposes of this motion only.

 Because the Commonwealth follows the identify theory rather than the intent theory, many of the cases cited by the plaintiff — while presenting identical factual patterns — are not controlling as they were decided by courts following a different theory of ademption. See, e.g., White v. White, 251 A.2d 470, 473 (N.J. Super. 1969) (Court, following the intention theory, holds that: “Where a testator has specifically devised real property upon which a house stands, which house is destroyed or damaged by fire before death and the testator dies without regaining capacity to indicate a contrary intention, the proceeds of fire insurance on the house replace the house and pass under the devise”). (Citations omitted.) The court today reaches the same result as the White court, but does so under a different analysis.

 The defendant has characterized the plaintiffs motion for summary judgment as an attempt to have this court abandon the identity theory which has been “followed in this Commonwealth for near 160 years” and most recently reaffirmed in Wasserman v. Cohen, 414 Mass. 172, 174 (1993). The defendant, however, has mischaracterized the plaintiffs motion. The plaintiff does not seek to abandon the identity theory but rather sirgues that the facts of the present case bring it within a recognized exception to the identity theory.

 Certainly, all of the Massachusetts cases which discuss ademption speak of an ademption taking place when the testator “disposes” of property within his or her lifetime. Wasserman, 414 Mass. at 173; Botswick v. Hurstel, 364 Mass. 282, 295 (1973); Walsh, 338 Mass. at 280; Moffat v. Heon, 242 Mass. 201, 204 (1922); Richards v. Humphreys, 15 Pick. 133, 135 (1833); BayBank Harvard Trust Co., 23 Mass.App.Ct. at 655. Such language might seem to imply that Massachusetts courts would follow those states which consider a bequest adeemed only if the property was disposed of as the result of some voluntary act of the testator. Other language in the above-cited cases would also support such a conclusion. BayBank Harvard Trust Co., supra, at 655 (“The legacy is adeemed by the act of the testator.” (Citing Moffatt v. Heon, 242 Mass. 201, 203-04 (1922)).

 Other courts have split on this particular exception to the identity rule. See, Jeffrey F. Ghent, Annotation, Ademption or Revocation of Specific Devise or Bequest By Guardian, Committee, Conservator, or Trustee of Mentally or Physically Incompetent Testator, 84 ALR.4th 462 (1991).

 At least one other court has held that the language of Walsh would support a finding that no ademption occurred in circumstances analogous to those here. In the Matter of the Estate of Leonard Allen Wolfe, 208 N.W.2d 923 (Iowa 1973). In that case, the decedent was killed in an automobile accident in which his car was destroyed. The decedent’s auto insurance carrier paid the estate $3,550 for the destroyed automobile. The car had been specifically bequeathed to the decedent’s brother; the decedent’s daughter was the residuary legatee. There, the court cited the Walsh decision and held that the destruction of the car would not act as an ademption of the specific bequest because, at the last moment the decedent could have exercised testamentary capacity, the car was still in existence. Id. at 925.

 The court notes that, in reaching this decision, it in no way abandons Massachusetts’ adherence to the identity rule discussed above. Instead, the court holds that, under the facts presented, the case falls squarely within the exception to the identity rule as outlined in Walsh. Accordingly, the defendant’s alternative contention that a genuine issue of material fact exists concerning the decedent’s intentions is immaterial.

 The will does not contain any other specific bequests which need to be addressed.